### SOUTHERN RY. CO. v. MEAHER et al.

(Circuit Court of Appeals, Fifth Circuit. January 2, 1917.)

No. 2988.

1. JUDGMENT ⬤⇒235—JOINT PLAINTIFFS—RECOVERY BY PART.
   In a joint action by three plaintiffs to recover for the conversion of earth removed from a tract of land by a railroad company, there can be no recovery by any of the plaintiffs, where one of them is not shown to have had any interest in the land, since all must be competent to sue.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 414, 429; Dec. Dig. ⬤⇒235.]

2. TENANCY IN COMMON ⬤⇒39—RIGHT OF ACTION—INJURY TO PROPERTY—CONSENT OF ONE COTENANT.
   In a suit by cotenants to recover for the conversion of earth removed by a railroad company from the land, there can be no recovery by any of the plaintiffs, if one of them consented to the removal of the earth.
   [Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 119; Dec. Dig. ⬤⇒39.]

3. TRESPASS ⬤⇒50—MEASURE OF DAMAGES—REMOVAL OF EARTH.
   The measure of damages for trespass by railroad company in removing earth from its right of way on plaintiffs' land, where it acted on an honest belief that it had a right to remove the earth, is the value of the earth at the time and place of its severance from the realty, not enhanced by the expense of excavating it, or of hauling it to the place where it was used.
   [Ed. Note.—For other cases, see Trespass, Cent. Dig. §§ 134, 136; Dec. Dig. ⬤⇒50.]

In Error to the District Court of the United States for the Southern District of Alabama; Henry D. Clayton, Judge.

Action by Augustine Meaher and others against the Southern Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

The record shows that this suit was originally instituted against the Southern Railway Company by Augustine Meaher and Henry Hall Clarke, individually, and Henry Hall and Norborne R. Clarke, as executors and trustees under the will of G. Clifton Clarke, deceased. The complaint contained two counts, each claiming $25,000 damages. The first count claimed for the conversion of 50,000 cubic yards of clay, and the second for a like amount of earth.

The plaintiffs introduced two deeds in evidence, covering the land through which defendant's right of way ran. These deeds ran to George C. Clarke and Augustine Meaher. They showed that Mr. Clarke died in July, 1909, that Mr. Meaher had looked after this land since the death of Mr. Clarke, and that he and the estate of G. Clifton Clarke, as joint owners, were in the possession of these lands in 1914 and 1915. They further showed that the defend-

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant in 1914 and 1915 had dug a large amount of dirt or clay from the side of a cut several miles north of Mobile, through which the defendant's track and right of way ran through plaintiff's lands, and transported it and used it in filling in trestles on defendant's line north of plaintiff's lands, and in filling in the freight yards and freight depot of defendant in the city of Mobile, and in filling in a part of the freight yards of the Mobile & Ohio in the city of Mobile, and in filling in and making a connecting or spur track between the defendant's road and that of the A. T. & N. Railroad, and introduced evidence to show the value of this dirt in Mobile and at the several places where it was dumped.

The defendant, Southern Railway Company, introduced evidence which showed that its predecessor in title, the Mobile & Alabama Grand Trunk Railroad Company, was chartered by an act of the Legislature of Alabama in February, 1866 (Laws 1865–66, p. 405) and thereby authorized to build a railroad from the city of Mobile north through the state of Alabama, with a right of way 100 feet wide; that in 1871 said railroad condemned a right of way 100 feet in width through the "Johnston Tract," the property of plaintiffs now in question; that immediately it constructed its road through this tract; that the title, franchises, and properties of the Mobile & Alabama Grand Trunk Railroad, by a straight chain of conveyances, court proceedings, and legislative acts, became vested in the defendant, the Southern Railway Company; that none of the dirt was taken from anywhere except from their 100-foot right of way; that the dirt so taken was hauled by it and used as shown by the plaintiffs' evidence, a great deal being used for railroad purposes on the Mobile & Alabama Grand Trunk Railroad; that one of the plaintiffs, Mr. Meaher, had consented to the taking of at least some of this dirt, and that this digging was in progress, more or less continuously, for about 14 months, and no protest or notice to stop was ever made or given by Mr. Meaher, although he had many times during that time been both at the place where the dirt was being dug and at the places where the dirt was being dumped; that it had acted in good faith in taking and using this dirt; and that this dirt had little or no market value, either where it was used or where it was excavated.

At the conclusion of the trial the jury brought in a verdict for the plaintiffs for $2,600.10, and judgment was rendered thereon by the court, to reverse which this writ of error is prosecuted; the plaintiff in error assigning 27 errors relating to admission and rejection of evidence, and charges to the jury given and refused.

D. P. Bestor, Jr., of Mobile, Ala., for plaintiff in error.

Gregory L. Smith, of Mobile, Ala., for defendants in error.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The assignments of error, all insisted upon in this case, cover the propositions:

[1] First. That the court erred in refusing to give the general affirmative charge requested by the defendant. This is based on the proposition that the suit was brought by the three persons joining, to wit, Augustine Meaher and Henry Hall Clarke, individually, and Henry Hall and Norborne R. Clarke, as executors and trustees under the will of G. Clifton Clarke, deceased, and that under the proof in the case Henry Hall Clarke, individually, had no interest in the subject-matter of the suit, and the law is thoroughly settled in both the state and federal courts and in all character of cases that all plaintiffs to an action must be competent to sue or the action cannot be maintained, and that if one of several joint plaintiffs is not entitled to recover then none can.

This proposition seems to be well founded. We do not find under the proof that Henry Hall Clarke had any individual ownership in the property claimed to have been damaged, and the law claimed to apply seems well settled. Prestwood v. McGowin, 128 Ala. 267, 29 South. 386, 86 Am. St. Rep. 136.

[2] Second. That the court erred in refusing to charge the jury that if they believed from the evidence that Augustine Meaher, one of the parties plaintiff, gave the defendant permission or authority to dig and remove any of the clay or earth in question, then they cannot award the plaintiffs any damages for the digging and removal of clay or earth covered by such permission or authority, on the ground that, where several who are cotenants sue to recover damages to their estate, the plea that sets up that the damages were by the consent or direction of one of the plaintiffs presents good defense to the action. The plaintiff who consented to the action could not recover, and all persons suing for the same action must be entitled to recover, or none can.

There was evidence sufficient to go to the jury that Meaher, one of the cotenants suing, consented to the removal of the earth sued for, and the law is plain. Lowery v. Rowland et al., 104 Ala. 420, 16 South. 88. As on a reversal a new trial may be had, in which the evidence may be different in relation to both foregoing propositions, we take up the main and controlling question in the case, which is as to the proper rule of damages on the theory that the plaintiffs below are entitled to recover. Said plaintiffs sued for the conversion of certain *clay* and *earth* taken by the defendants from the Montgomery & Alabama Grand Trunk Railroad right of way, contending that it became, as soon as severed, merchantable property belonging to them as owners of the fee, for which they are entitled to recover, as for any merchantable commodity, like coal, timber, gravel, or building sand, its full value at any place to which it is finally removed or used.

On the other hand, it is contended that the clay and earth actually excavated and afterwards removed from the right of way had no marketable value as a commodity, and got none except from excavating and hauling for a special purpose, and then only was valued at the cost of excavating and hauling, and that the true rule of recovery was the damage to the realty by removing the same, or, at most, the value of the clay and earth at the place and time it was excavated. The defendants below also contended, to the same effect, that if this clay and earth was wrongfully taken from the plaintiffs' property through mistake, or with the honest belief that it was actually within its legal rights in so doing, then the measure of damages was the value of the earth so taken as it rested in its original place before the digging; and there was evidence tending to show that in taking the said clay and earth the defendant acted honestly in the belief that it was fully within its rights.

As to the character and value of the excavated earth removed by the defendant:

"Engineer Nicol testified that: 'The land up there in which this cut is made is the ordinary pine land in the Mobile plateau. It is the ordinary material found throughout Mobile county on the elevated division.' Engineer Buckley

testified: 'I call the soil there sandy clay; the country looks open land to me; it has been cut over.' Engineer Towle testified: 'The country up there where this cut was made is piney woods.' As we calculate it, the area dug over by the defendant aggregated 3.7 acres."

"Mr. Cochrane said: 'The Southern brought it there and dumped it on the track, and we paid for the service, whatever that was. In that arrangement or contract nothing was paid specifically for the dirt. I had an agreement to pay so much for the steam shovel, locomotive, cars, and train crew, and that was the basis on which I paid them, by the day. In that agreement there was no amount of money to be paid for each cubic yard of dirt; it was for the service, transportation, and equipment, payment for the laborers, workmen, engineer, etc.'

"The witness Sims said: 'The stuff that was brought down here was clay; we call it pipe clay; strip of pipe clay in it. I do not know anything it was good for except filling, and (if?) you cannot get anything better; it will answer for filling when you can cover it up with better material. It has to be put down, and has to be covered with something else, because the rain affects it; it gets mushy and sloppy; we call it churning; it is sticky. You have to confine it and shelter it with some other material. I have never noticed during my connection with the road any kind of this material brought in by train to Mobile by dealers in road material, gravel, and sand. There is nobody to my knowledge engaged in getting out this kind of material up there and sending it to Mobile for sale. I have never seen any brought to Mobile. I cannot say what it is worth there immediately after it is dug out of the soil. I have never heard of any value being placed on that kind of material.'

"The witness Hancock said: 'There was no market for dirt in Mobile. I mean, there was no market for it, such as there is for sand and gravel and such as that.'

"The witness Ennis said: 'There wasn't any market value ât that time in Mobile for stuff of that character.'

"The witness Radcliff said: 'The dirt is always worth something. You would have to buy it or own it. There is no general market on any of this dirt. It is all figured on contracts; when a man wants it, he wants it bad; it depends on the contract. If they don't want it, you can't get rid of it at all. We never mine any of it, unless we have a contract. You can't bring it down here and wait for a market.' "

During the trial the defendant offered evidence to show the value of the lands in the immediate neighborhood of the excavations complained of, and on objections of immateriality and irrelevance the same was excluded by the court and exception duly taken. The record shows that the court charged the jury orally, to which some exceptions, not material to mention here, were noted, whereupon the plaintiff requested in writing the following charge:

"The plaintiff in this case makes no claim for the earth used upon that part of the defendant's track that was part of the road of the Mobile & Alabama Grand Trunk Railroad; and the court charges you that the defendant did not have the right to take any earth from plaintiff's lands and place it upon the property of the A., T. & N. R. R. Co., or upon the property of the Mobile & Ohio Railroad Company, or upon any portion of the track of the Southern Railway which was no part of the roadbed of the Mobile & Alabama Grand Trunk Railroad Company; and if the jury find for the plaintiff for the dirt that was taken by defendant and so used, they should estimate plaintiff's damages at the reasonable value of the earth delivered at the point where it was used or placed by the defendant."

And the court gave said charge and read the same to the jury in connection with the court's general charge, to all of which the defendant then and there duly excepted, and thereupon the defendant requested the court to give the following charge:

"The court charges the jury that if they believe from the evidence that the defendant, through its employés, willfully or intentionally trespassed on the property of the plaintiffs and took therefrom the earth in question, then the measure of the plaintiffs' damage is the enhanced value of the earth so taken when and where it was finally converted to the use of the defendant; but if you should find from the evidence that the defendant took and converted the earth from plaintiffs' property through inadvertence or mistake, or in the honest belief that it was acting within its legal rights, then the measure of damage is the value of the earth so taken as it was in the ground before it was disturbed by the defendant."

The court refused to give said charge, and the defendant then and there duly excepted.

The defendant further requested the court to give the following written charge:

"The court charges the jury that the measure of plaintiff's damages in this case is the difference in the market value of the lands trespassed on immediately before the commission of the injuries and the market value of the lands immediately thereafter"

—which the court refused to give the jury, and to such refusal the defendant duly excepted. Whereupon the defendant requested the court to give the following written charge:

"The court charges the jury that if they believe the evidence they can award to the plaintiff as damages in this case only the value of the clay or earth immediately after its severance from the ground"

—which was refused and the defendant duly excepted.

[3] It thus appears that, while excluding evidence of the value of the land theoretically trespassed upon and the surface of which was actually excavated, the jury was practically instructed to find damages based on the value of the earth at any point to which it was subsequently hauled and disposed of; and this tends to explain a verdict condemning the defendant to pay over $2,600 for removing from the surface of some 3.7 acres of land worth to the plaintiffs after the earth was removed by reason of its condemnation for a railroad right of way as much as before, because as to them the land was out of commerce, and their title remote and contingent, charged with a servitude practically perpetual. Since the Woodenware Case, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, the rule has been in the United States courts that the honest or mistaken trespasser, severing timber, coal, ore, etc., from the land of another, is liable for the value of the product severed at the time and place of severance, and it was error to refuse the charge requested by the defendant below in that respect.

Further than this, assuming, but not deciding, that the defendant below, by reason of his title and occupancy and possession, had no right to take clay and earth from the right of way of the Mobile & Alabama Grand Trunk Railway to use on defendant's other lines, although connected by tracks and in a sense forming a part of the same system, we are of opinion that under all the circumstances shown by the evidence in this case the true measure of damages is the value of the earth and clay at the time and place of severance, not to be

enhanced by expense of excavating and hauling to other places for disposition and use.

The judgment of the District Court is reversed, and the case is remanded, with instructions to set aside the verdict and award a new trial.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes