Albert E. SCHAFER and Willian N. Schafer, Appellants,

v.

John J. SCHNABEL and Schnabel Lumber Company, Appellees.

No. 1385.

Supreme Court of Alaska.

March 17, 1972.

Warren C. Christianson, Sitka, for appellants.

Michael M. Holmes, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of an action for trespass and conversion brought by the Schafers against Schnabel. In their complaint the Schafers alleged that Schnabel had trespassed on their lands and converted raw materials therefrom in the course of Schnabel's relocation of a road which traversed their adjoining lands. The Schafers sought the recovery of compensatory damages for the conversion of timber, gravel and blue clay by Schnabel and for the costs of having to remove quantities of blue clay which Schnabel had taken from the Schafers' lands and then dumped on the seaward border of their lands. Punitive damages were also sought on the basis that Schnabel acted wilfully, intentionally and in utter disregard of their rights. By way of affirmative defense to these allegations Schnabel asserted that he realigned the road in order to allow the public to safely travel over it, and that this work was performed with the consent and permission of the Schafers. More particularly, Schnabel alleged that the road's relocation was carried out in reliance upon a lease agreement with the Schafers authorizing the use of their lands to relocate the road.

The matter was tried to the superior court without jury.[1] In its decision, which was filed in lieu of formal findings of fact and conclusions of law,[2] the trial court found that the Schafers and Schnabel had not finalized any lease agreement authorizing Schnabel's entry upon and removal of materials from the Schafers' lands. The

1. Prior to trial Schnabel moved for partial summary judgment as to that portion of the Schafers' complaint which alleged trespass to tidelands. In granting this motion the court ruled that this claim for relief should be dismissed "because there could be no trespass by [Schnabel] against the rights of the [Schafers] in this case as a matter of law because the [Schafers] neither owned nor [were] in actual posses-

sion of the tidelands at the times referred to in the Complaint . . . ."

AS 38.05.365(18) defines tidelands as "those lands which are periodically covered by tidal waters between the elevation of mean high and mean low tides . . . ."

2. This is permissible under Civ.R. 52.

trial court further found that there was no factual basis for finding that the Schafers should be estopped from recovering damages from Schnabel, and that Schnabel had failed to prove that the Schafers had in fact consented to his entry upon and removal of materials from their lands.

In awarding damages for the removal of materials from the Schafers' land, the trial court noted that the Schafers had "elected to take whatever market value may be assigned to these separable items . . . in substitution for damages measured by the diminution in value of the land as a whole."[3] In this regard the trial court further found that the Schafers had failed to prove by a preponderance of the evidence that Schnabel had acted in bad faith and concluded that Schnabel was not liable for a higher measure of damages in regard to the materials taken.[4] More specifically, the trial court found that "it appeared from the evidence equally possible that [Schnabel was] fully confident that a satisfactory agreement between the parties [permitting the use of the Schafers' land] was or would be reached and that [Schnabel] acted on the basis of this confidence." The trial court therefore concluded that the Schafers were not entitled to recover the enhanced market value of the materials converted but did award $1,350 for the in-place market value of timber removed by Schnabel and $7,000 for the in-place market value of gravel removed. The trial

court further concluded that the removed blue clay had no value. Regarding the damages which the Schafers sought for the costs of removing the blue clay fill materials that Schnabel had placed to the seaward of the Schafers' lands, the court first alluded to the fact that it had earlier determined by partial summary judgment that no award should be allowed the Schafers for the removal of fill materials placed upon the actual tidelands lying seaward of their land.[5] The trial court then stated that despite its earlier holding the Schafers urge

> that by the process of reliction, or retrocession of the sea, substantial areas seaward of the original meander lines have in fact increased the acreage of their lands and that the offending fill materials are on this new area now lying landward of the present line of mean high tide.

In rejecting these contentions, the trial court ruled in part:

> In my view [the Schafers] have failed to show by a fair preponderance of the evidence that any material movement of the line of mean high tide seaward in front of these two tracts has in fact occurred, or at least not by any other reason than from acts of man from which [the Schafers] can derive no rights of ownership. I therefore conclude that [the Schafers] are not entitled to any damages for removal of the fill materials

---

3. There appear to be four rules which have been employed in measuring the damages recoverable for wrongful removal of earth, sand, or gravel. Some courts have allowed recovery only for the difference in the value of the land before and after removal or the cost of restoration; others allow recovery only for the value of the material removed; the position of the Restatement of Torts is that the plaintiff may elect either the difference in the total value of the land, before and after, or the value of the removed materials; and some jurisdictions allow recovery for both under some circumstances. *See* Annot., 1 A.L.R.3d 801 (1965).

In the case at bar the parties agreed that the Restatement rule requiring an election should be followed. *See* Restate-

ment of Torts § 929 (1939). The trial court gave effect to the Schafers' election and awarded damages on the basis of the value of the materials which had been removed.

4. A corollary to the election rule is that if the removal was done in bad faith the severed market value (i. e., not reduced by the defendant's labor and expenses) is the basis for the award instead of market value of the materials in place (the appropriate measure if the removal was innocent). *See* Southern Ry. v. Meaher, 238 F. 538 (5th Cir. 1917); Annot., 1 A.L.R.3d 801, 803, 810–12 (1965).

5. For Alaska's definition of tidelands see note 1, *supra*.

placed by [Schnabel] seaward of the meander lines of the two tracts as shown in their original surveys.

In this appeal the Schafers contend that the trial court erred in failing to find the necessary factual predicate for an award of punitive damages, in failing to find bad faith on Schnabel's part in regard to his removal of gravel, timber, and blue clay, in finding that the blue clay was valueless and in finding that the line of mean high tide had not moved seaward, at least not by any other means than from the acts of man.[6]

Disposition of most of the issues raised in this appeal is governed by our well-established "clearly erroneous" standard of appellate review.[7] Under this criterion we cannot say that study of the record in this case has left us with a definite and firm conviction that the trial court was mistaken in any of its essential findings of fact relating to the issues of punitive damages and the amount of damages recoverable for Schnabel's removal of gravel and blue clay.[8]

Turning to the Schafers' assertions pertaining to the issues of bad faith and punitive damages, we note that the trial court specifically found that the Schafers had failed in their attempt to show Schnabel acted in bad faith in carrying out the relocation of the road. Rather the trial court viewed the evidence as raising the distinct possibility that Schnabel believed a satisfactory agreement would be entered into with the Schafers, which agreement would have permitted use of their lands, and that Schnabel acted on the basis of this belief.

In Bridges v. Alaska Housing Authority, 375 P.2d 696, 702 (Alaska 1962), we said that punitive damages are recoverable

> where the wrongdoer's conduct can be characterized as outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another. (footnote omitted)

In *Bridges* we further adopted the position of the Restatement of Torts that whether punitive damages should be awarded is within the discretion of the trier of fact.[9] It follows that the decision of the trier of fact not to grant, or to grant, punitive damages will be reversed on review only if a clear abuse of discretion is found.[10] As mentioned previously, we are not persuaded that the trial court's findings of fact going to the issue of punitive damages are clearly erroneous. Thus given the trial court's finding that no bad faith on Schnabel's part was shown and that Schnabel acted under the belief that an agreement would be finalized with the Schafers permitting relocation of the road over their lands, we conclude that the trial court did not abuse its discretion in failing to award the Schafers punitive damages.[11]

Our conclusions as to the correctness of the trial court's findings relating to Schnabel's lack of bad faith under the punitive damage issue control disposition of the Schafers' specification of error concerning Schnabel's removal of gravel. As to this facet of their appeal, the Schafers argue they should have been awarded dam-

6. In conjunction with this last specification of error, the Schafers also argue that error was committed by the trial court when it held that in order to constitute an accretion which would extend the title of the uplands owner to the line of mean high tide such accretion can in no way be by reason of acts of man.

7. Alaska Civ.R. 52(a).

8. Prince v. LeVan, 486 P.2d 959 (Alaska 1971); Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co., 482 P.2d 842, 846–848 (Alaska 1971); Palfy v. Rice, 473 P.2d 606 (Alaska 1970).

9. Restatement of Torts § 908(2) (1939).

10. Nissen v. Hobbs, 417 P.2d 250, 251 (Alaska 1966); Bridges v. Alaska Housing Authority, 375 P.2d 696, 702 (Alaska 1962).

11. Our holding makes it unnecessary to reach Schnabel's further contention that we should reject in its entirety the doctrine of punitive damages.

ages based on a higher range of proved market values because the removals were carried out in bad faith.[12] On this point the trial court found that the Schafers had failed to make the showing that Schnabel had acted in bad faith which might have justified the higher measure of damages.[13] Since this finding is not clearly erroneous, we affirm the trial court's award of damages for gravel.[14]

The final question presented in this appeal concerns whether the trial court erred in its finding that the acreage of Schafers' lands had not been increased by the process of accretion. This finding was held by the trial court to be determinative of the Schafers' claim for relief for the removal of blue clay materials which Schnabel placed seaward of the original line of mean high tide adjacent to the Schafers' lands. The Schafers contend that they had produced sufficient evidence to show that the mean high tide line had in fact moved seaward of the U. S. survey's original meander line. In this regard the trial court found that the Schafers had

> failed to show by a fair preponderance of the evidence that any material movement of the line of mean high tide seaward in front of these two tracts has in fact occurred, or at least not by any oth-

er reason than from acts of man from which [the Schafers] can derive no rights of ownership.

■ We have concluded that this finding of fact is not determinative of the Schafers' claim for relief for removal of the fill materials which Schnabel allegedly placed on their lands. In this finding of fact the superior court did not find that no material seaward movement of the line of mean high tide had occurred; rather the court found that no movement had occurred other than by act of man.[15] We therefore hold that the matter must be remanded to the superior court for the purpose of entering additional findings of fact, and the holding of further proceedings if necessary, in accordance with the following.[16]

■ Upon remand the trial court should determine whether the Schafers proved that the mean high tide had moved seaward of the original U. S. survey's meander line by accretion, regardless of whether such accretion occurred because of acts of man. Accretion is defined as the process by which an area of land along a waterway is expanded by the gradual deposit of soil there due to the action of contiguous waters. The general rule applied to accretion is that it benefits the riparian

12. See note 3, *supra*, where the various tests for determining recoverable damages for wrongful removal of gravel are set forth.

13. The proved market values for the gravel ranged from 25 cents to 50 cents per yard. The trial court awarded 35 cents per yard for the gravel that had been removed.

14. As mentioned previously, the Schafers sought damages for the conversion of the blue clay as an alternative claim to their claim for relief based on the cost of restoration of land upon which the blue clay had been deposited by Schnabel.

We perceive no error in the trial court's failure to award the Schafers damages for the blue clay taken from their lands. Review of the record supports Schnabel's position that the Schafers failed to adduce evidence as to the value, if any, of the blue clay. In Dowling Supply & Equip., Inc. v. City of Anchorage, 490

P.2d 907, 909–910 (Alaska 1971), we held in part that some competent evidence as to the amount of damages must be introduced before an award is justified.

15. At trial Schnabel contended that any accretion to the Schafers' properties was substantially the result of man-made fills, primarily from establishment of the highway roadbed along the original seaward meander lines of these tracts. The trial court in its decision held that "[a]ccretion by this means would give no rights in the underlying lands to [the Schafers] as upland owners."

16. Upon remand the trial court should also make specific findings regarding the rule of reliction and its application to the facts of this case. Reliction involves an increase in the amount of exposed land beside a body of water, but properly refers only to situations where the water itself has receded.

owner.[17] The basic justification for the rule is that it protects the riparian owner's interest in his land by assuring him continuing access to the water and the advantages consequent thereto.[18] The burden is upon the riparian owner to show that accretion has in fact occurred. More particularly, his proof must demonstrate that a gradual depositing of alluvium by the actions of contiguous waters has taken place.[19] It is generally held that it is immaterial whether the deposits derived from natural causes or had an artificial impetus so long as the deposits were gradual. In this regard the Supreme Court, in County of St. Clair v. Lovingston, 23 Wall. 46, 90 U.S. 46, 66, 23 L.Ed. 59, 63 (1874), rejected the notion that the accretions there in question were not within the rule merely because they were attributable to the erection by third persons of dikes upstream which changed the current and accelerated deposits. The Supreme Court said: "The proximate cause was the deposits made by the water. The law looks no further. Whether the flow of the water was natural or affected by artificial means is immaterial." This position has been adopted in most jurisdictions. Thus, if the accretion is brought about by the acts of a third person in which acts the riparian owner played no part, then the riparian owner is not precluded from acquiring title to the accreted land.[20]

■ There remains for discussion one additional facet of this accretion issue. Schnabel asserts that even if there were some accretion it would inure to the benefit of the state, not to the Schafers, because of the highway that separates Schafers' land from the water. If the rationale of the rule is to protect a riparian owner's access to the water, the doctrine of accretion becomes inapplicable to a case in which the claimant's lot is not contiguous to the water.[21] Thus it is of importance in the instant case, assuming that accretion has occurred, that the trial court determine whether the road was built on the Schafers' properties entirely, pursuant to an easement. Additionally the court should determine whether the road was built on what was then tidelands reserved to the state, since the state's ownership of a strip of land between Schafers' properties and the water would negate any rights the Schafers might have asserted to accretions in front of their land.[22]

Affirmed in part and remanded in part for further proceedings in conformity with this opinion.

---

17. *See* 6 R. Powell, Law of Real Property ¶ 983 (rev. ed. 1971).

18. Some courts have also characterized the doctrine of accretion as compensating the riparian owner for the risk he runs of losing some of his land by erosion; others have called it a fact of natural law; still others employ the doctrine to dispose of small unaccounted-for parcels. Waynor v. Diboff, 9 Alaska 230 (1937); 6 R. Powell, Law of Real Property ¶ 983 (rev. ed. 1971).

19. In County of St. Clair v. Lovingston, 23 Wall. 46, 90 U.S. 46, 68, 23 L.Ed. 59, 64 (1874), the Supreme Court of the United States explained what "gradual" meant: In the Supreme Court's view the test as to what is gradual and imperceptible under the rule is that, though the witnesses may see from time to time that progress has been made, they could not perceive how much is being added at any one moment of time.
   The decisions have been careful to distinguish filled lands from accreted lands. *See, e. g.*, City of Newport Beach v. Fager, 39 Cal.App.2d 23, 102 P.2d 438, 442 (Cal.App.1940); Sage v. Mayor of City of New York, 154 N.Y. 61, 47 N.E. 1096, 1103 (N.Y.1897).

20. Nordale v. Waxberg, 84 F.Supp. 1004 (D.Alaska 1949), aff'd mem., 182 F.2d 1022, 12 Alaska 695 (9th Cir. 1950); State v. 6.0 Acres of Land, 101 N.H. 228, 139 A.2d 75, 77 (1958); Borough of Wildwood Crest v. Masciarella, 51 N.J. 352, 240 A.2d 665, 668–669 (1968).

21. Earle v. McCarty, 70 So.2d 314 (Fla. 1954).

22. Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962).