**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**John J. SCHNABEL and Schnabel Lumber Company, Appellees.**

**No. 1570.**

Supreme Court of Alaska.

Dec. 18, 1972.

---

35. Marks v. State, 496 P.2d 66, 68, n.6 (Alaska 1972).

36. AS 12.10.010.

Robert J. Annis, Juneau, for appellant.

Michael M. Holmes, Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

Before RABINOWITZ, C. J., and CONNOR and ERWIN, JJ.

RABINOWITZ, Chief Justice.

John Schnabel and the Schnabel Lumber Company were insured under a general liability policy issued by the United States Fire Insurance Company. Under the terms of the policy, United States Fire agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . . property damage to which this insurance applies, caused by an occur-

rence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

During the effective period of the policy, Schnabel was engaged in the relocation of a road near Haines, Alaska. In the course of the road construction, Schnabel entered upon the lands of Albert and William Schafer, prepared a roadbed across their property, and in the process cut and removed timber and extracted gravel and blue clay from the Schafers' property. The Schafers brought suit against Schnabel and the Schnabel Lumber Company for trespass upon their property and for conversion of raw materials.[1] Schnabel tendered defense of this suit to United States Fire Insurance Company, but the company refused to defend. Schnabel thereafter retained his own counsel to defend the suit.

The Schafers ultimately were awarded damages in the amount of $8,350.[2] The trial court in that case found that the Schafers had failed to prove that Schnabel had acted in bad faith, and that the Schafers were entitled to damages for innocent removal of the raw materials rather than the higher measure of damages for bad faith removal.[3]

Following entry of judgment in the *Schafer* litigation Schnabel brought suit against United States Fire alleging that the company had breached its duty to defend and seeking damages for the total amount of the Schafers' judgment,[4] plus the expenses Schnabel had incurred in defending the suit. United States Fire, by way of affirmative defense, denied that it had a duty to defend because the damages Schnabel became obligated to pay the Schafers were excluded from coverage under the policy.

Schnabel moved for summary judgment. During the hearing on that motion, counsel for United States Fire orally moved the court for leave to amend its answer to include a set-off or counterclaim against Schnabel on the theory that Schnabel had received a benefit of $8,350, the value of the raw materials he removed. United States Fire contended that Schnabel would be unjustly enriched by that amount if a judgment against the company included the $8,350.

The superior court granted Schnabel's motion for summary judgment, but made no mention in its memorandum decision of United States Fire's motion for leave to amend. Within 10 days after the entry of judgment, United States Fire moved the court for post-judgment relief, seeking a reduction in the judgment of $8,350. The superior court denied the motion. United States Fire has appealed from the summary judgment and from the superior court's denial of its motion for post-judgment relief.

1. In addition to the damages sought for removal of the timber, gravel, and blue clay, the Schafers also sought damages for the cost of removal of blue clay that Schnabel had deposited on the seaward border of the Schafers' property. Prior to trial, the superior court granted Schnabel's motion for partial summary judgment as to this portion of Schafers' claim on the ground that Schafers did not own or possess the tidelands. In Schafer v. Schnabel, 494 P.2d 802 (Alaska 1972), we reversed that grant of partial summary judgment.

2. The trial court in Schafer v. Schnabel found that the blue clay had no value. Of the $8,350 awarded, $1,350 represented

the value of the timber and $7,000 the value of the gravel. On appeal, we affirmed the trial court's finding that the blue clay had no value. Schafer v. Schnabel, 494 P.2d 802, 806, n. 14 (Alaska 1972).

3. In Schafer v. Schnabel, 494 P.2d 802, 806 (Alaska 1972), we also affirmed the trial court's finding that the Schafers had failed to prove Schnabel had acted in bad faith and approved the measure of damages applied.

4. After adding interest, costs, and attorneys' fees, the total judgment was $11,754.50. Schnabel paid this judgment before filing suit in the present case.

In National Indemnity Company v. Flesher, 469 P.2d 360, 366, 367 (Alaska 1970), we effectively held that an insurer has a duty to defend when the suit alleges facts within an exception to the policy but the true facts are within, or potentially within, the policy coverage and are known or reasonably ascertainable to the insurer. The first question before us, then, is whether the Schafers' suit against Schnabel involved facts that were within, or potentially within, the policy's coverage.

The Schafers' complaint alleged that Schnabel

> with full knowledge of the rights of [the Schafers] to the property in question and with willful and utter disregard of those rights . . . started and almost completed a road across [the Schafers'] property . . . removed standing timber . . . and removed . . . fill material . . . .[5]

In his answer, Schnabel did not deny that he had done the acts alleged, but defended on the ground that he had received the Schafers' permission to build the road across their property.[6]

United States Fire argues that it had no duty to defend, primarily because there was no coverage or potential coverage under the policy in question, since the damage to Schafers' property fell within one of the policy's stated exclusions. The portion of the policy upon which United States Fire relies provides:

This insurance does not apply:

. . . . . .

(i) to property damage to

(1) property owned or occupied by or rented to the insured, or

(2) property used by the insured, or

(3) property in the care, custody or control of the insured as to which the insured is for any purpose exercising physical control . . . .

United States Fire reasons that these exclusions control for Schnabel must have had physical control or use of the Schafers' property in order to have entered upon it and converted the raw materials. In this regard, United States Fire points to the fact that since Schnabel admitted in his answer to the Schafers' complaint that he had entered upon the Schafers' property, and thus even under Schnabel's version of the facts the above-quoted exclusion precludes coverage, consequently it had no duty to defend.

We do not agree that this exclusion applies in consideration of the circumstances surrounding the trespass as set forth by Schnabel in his answer to the Schafers' complaint.[7] This care, custody and control exclusion is a standard one in liability policies and has been the subject of a good deal of litigation.[8] Many courts have found that care, custody and control exclusions are ambiguous and must be construed against the insurance company.[9] In

---

5. The Schafers also asked for punitive damages. These were disallowed by the trial court, and that determination was upheld on appeal.

6. Specifically, Schnabel contended that prior to entering upon the property he and the Schafers had reached an oral agreement to lease the property.

7. In determining what the "true facts" are for purposes of the Flesher test, we believe the insurance company must give weight to the version of the facts offered by its insured, if it appears that the insured's version is at least reasonable. Thus, the facts as set forth in Schnabel's answer to

the Schafers' complaint should have been taken into consideration by the company in determining whether it had a duty to defend.

8. See, Annot., 62 A.L.R.2d 1242 (1958).

9. E. g., Employers Mut. Liab. Ins. Co. v. Puryear Wood Products Co., 247 Ark. 673, 447 S.W.2d 139 (1969); Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N.J. Super. 478, 169 A.2d 509 (1961); Boswell v. Travelers Indem. Co., 38 N.J. Super. 599, 120 A.2d 250 (1956); Harris Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co., 21 Ohio App.2d 81, 255 N.E.2d

deciding whether the exclusion applies to particular facts, some courts have focused on the language of the exclusion.[10] Others have looked to the apparent reasons why insurance companies adopted this particular exclusionary language in their liability policies to determine whether, in light of those reasons, the policy was intended to exclude coverage in the circumstances of the particular case.[11]

█ Where real property is involved, the care, custody and control exclusion is particularly ambiguous because it does not make clear whether the word "property" refers only to the portion of the property damaged or to the property as a whole.[12] While Schnabel may have had control over or used the portion of the Schafers' property that he actually entered upon, he did not use or exercise control over all of the Schafers' real property. Thus, if we construe "property" in favor of the insured,[13] we should construe the term to mean the entire tract that Schafers owned. Under this construction, the exclusion does not apply because Schnabel did not use or exercise care, custody or control over the "property" damaged.[14]

Nor do we believe the reasons advanced for the care, custody and control exclusion have any application to the facts of the case at bar. One commentator has suggested that the exclusion has been placed in liability policies

to avoid what is called in the insurance business 'adverse selection of risks'. Keeping in mind that the standard policies are printed to apply very generally to all activities of our civilized life, one person buys insurance having in mind the possibility of certain losses common to his business or other activities; another insured has in mind entirely different hazards against which he is certain that he needs the coverage. Since insurance premiums are based on the 'experience' for each coverage, it is not reasonable that policyholder A should have to pay a rate based on the exposures more common to policyholder B and vice versa. Most of the property damage exclusions can be eliminated by

302 (1970); Innis v. McDonald, 150 N.E. 2d 441 (Ohio Com.Pl.), aff'd, 150 N.E.2d 447 (Ohio App.1956).

10. Great Am. Indem. Co. v. Saltzman, 213 F.2d 743 (8th Cir. 1954); Boswell v. Travelers Indem. Co., 38 N.J.Super. 599, 120 A.2d 250 (1956); Annot., 62 A.L.R. 2d 1242 (1958).

11. Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509 (1961); Ferguson v. Birmingham Fire Ins. Co., 254 Or. 496, 460 P.2d 342 (1969).

12. Where personal property is involved, the insured normally will have possession of the entire property and such possession will be exclusive. In such cases the term "property" is not particularly ambiguous.

13. Where a clause in an insurance policy is ambiguous, we are bound to construe the clause liberally in favor of the insured. Marwell Constr., Inc. v. Underwriters at Lloyd's, London, 465 P.2d 298 (Alaska 1970); Lumbermen's Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104 (Alaska 1963).

14. The court, in Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co., 21 Ohio App.2d 81, 255 N.E.2d 302, 306 (1970), took a similar approach to the problem, stating that when the term "property" refers to a "building or structure capable of being in divided physical control, [the term] is inherently subject to these basically differing meanings." Although that case involved damage to a structure on which the insured was making additions and alterations, certainly a tract of land is equally capable of being in divided physical control.

We believe the exclusion is ambiguous also because it is not clear what "use," "care," "custody," or "control" mean. It may well be that the exclusion contemplates exclusive possession or use. There is nothing in the record to indicate that during the time Schnabel was on a portion of the Schafers' lands he had exclusive access to, or exclusive possession of, that portion of the property. Further, it is difficult to conceive of how one "uses" a tract of land in the conventional understanding of the word "use." In this regard, see Great Am. Indem. Co. v. Saltzman, 213 F.2d 743 (8th Cir. 1954).

an endorsement forming a part of the policy for which an additional premium is charged; in this way the losses are distributed among those who incur them.

. . . Another reason for the exclusion is concerned with the 'moral hazard': when the insured takes charge of a piece of property or an article having any value which belongs to the claimant, he feels morally responsible for any damage caused by him and is more interested in seeing that the owner is generously compensated by his company. In many of the cases a 'bailment for hire' is involved and the insured is absolutely liable for all practical purposes for any damage and if negligence must be established, he is ready for the evidence necessary.[15]

The damage to the Schafers' property cannot be characterized as arising out of a risk common to Schnabel's business or other activities. Schnabel was not constructing the road for a third party for a contract price; nor was road construction apparently a common activity for him. Nor do we believe the "moral hazard" rationale is present in this case. For, while Schnabel claims he believed he entered the Schafers' lands with their permission, the Shafers claimed he had no permission and filed suit for trespass. Schnabel might have felt a moral responsibility to see the Schafers generously compensated for damage to their property had the Schafers actually given him permission to enter upon their lands. Under the circumstances of the case at bar, we cannot find any factual basis for holding the moral hazard rationale of the care, custody and control exclusion applicable.[16] We therefore hold that the superior court was correct in determining that United States Fire had a duty to defend Schnabel in the Schafers' litigation and that the company breached that duty.[17] However, we believe the superior court erred in refusing to allow United States Fire to amend its pleadings.

---

15. Gowan, Provisions of Automobile and Liability Insurance Contracts, 30 Ins. Coun.J. 96, 103 (1963). *See also* Cooke, Care, Custody and Control Exclusions, 1959 Ins.L.J. 7; Ramsey, The Care, Custody, Control Exclusion of Liability Insurance Policies, 25 Ins.Coun.J. 288 (1958).

16. In our view, the facts do not show a bailment for hire situation.

17. The superior court found that the use, control, and custody of the property which Schnabel exercised was not included within the exclusions set forth in the general liability policy issued by United States Fire. In concluding that the reasons for this exclusionary clause were inapplicable, the trial court relied on Ferguson v. Birmingham Fire Ins. Co., 254 Or. 496, 460 P.2d 342, 346 (1969) (footnote omitted), where the court said:

We interpret the phrase 'property as to which the insured for any purpose is exercising physical control' to mean property over which the insured assumes control, knowing that it belongs to another. Where the insured knowingly assumes control over another person's property, either with or without permission, there are reasons for excluding coverage. But we are unable to think of any valid reason for excluding coverage where the insured, while engaged in a non-business activity, unwittingly exercises control over another person's property and in the course of doing so damages it.

Having found that the company had breached its duty to defend, the superior court awarded damages to Schnabel for the total amount of the Schafers' judgment, plus the expenses he had incurred in defending the suit. We note that while many courts follow the rule that a breach of the duty to defend gives rise to liability for the amount of the prior judgment, e. g., Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), other courts have drawn a distinction between damages for breach of the duty to defend and a breach of the agreement to indemnify. E. g., Rochester Woodcraft Shop, Inc. v. General Accident Fire & Life Assurance Corp., Ltd., 35 A.D.2d 186, 316 N.Y.S.2d 281 (1970). Since United States Fire has not raised this issue on appeal, however, we decline to decide whether an insurance company that wrongfully refuses to defend is estopped from denying coverage in a subsequent suit brought by the insured.

■ Initially, United States Fire orally moved the trial court for leave to amend its answer at the hearing on Schnabel's motion for summary judgment. The court did not, however, mention this motion either at the hearing or in its memorandum decision. Within 10 days after the entry of judgment, United States Fire moved, under Alaska Civil Rule 59(f), for an order amending the judgment by offsetting the $8,350 by which United States Fire claimed Schnabel was benefited as a result of having removed the raw materials from the Schafers' property.[18] This motion was summarily denied.

■ On appeal, United States Fire has argued that the motion for an order amending the judgment should have been granted because the findings of fact and conclusions of law adopted by the trial court in Schafer v. Schnabel supported a finding that Schnabel had converted the raw materials to his own benefit.[19] We must reject this argument, however, because the issue of whether Schnabel benefited from the removal of the raw materials was not before the court in the Schafer v. Schnabel litigation and was not necessary to a determination of that suit.[20] We agree, however, that United States Fire should have been given an opportunity to litigate its claim of unjust enrichment.[21]

■ Since the trial court's memorandum decision granting summary judgment to Schnabel contains no reference to United States Fire's motion for leave to amend, we must assume that the trial court either inadvertently overlooked that motion or determined that it had been made in an improper form, and therefore need not have considered it. The fact that the motion was made orally would not be proper grounds for refusing to give it consideration nor for denying it. Alaska Civil Rule 7(b)(1) provides:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

Since the oral motion was made during the hearing on Schnabel's motion for summary judgment, it need not have been presented in writing. Here the motion was made at

---

18. United States Fire moved alternatively under Alaska Civ.R. 60(b). However, where a motion for post-judgment relief is made within 10 days after the entry of judgment, it should ordinarily be treated as having been made under Civ.R. 59(f). 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1308, at 279 (Supp.1971).

19. More specifically, United States Fire argued that because the court in the Schafer v. Schnabel litigation awarded damages to the Schafers based on the market value of the timber and gravel, Schnabel must have received a benefit of the same value.

20. Restatement of Judgments § 68(2) (1942) provides:
> A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action.

*See also* Restatement of Judgments § 68, comment *o* at 309 (1942). Whether the defendant actually benefited from the conversion *is not essential to his liability for* that tort. It is enough that the plaintiff shows a substantial interference with the property converted. W. Prosser, Law of Torts § 15, at 91 (4th ed. 1971).

21. United States Fire characterized its claim of unjust enrichment both as a set-off and as a counterclaim. Although the proper characterization of its claim is not necessary to a determination of this appeal, we note that this claim is more in the nature of a set-off and therefore an affirmative defense rather than a counter-claim. 6 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1271, at 310 (1971) (construing Fed.R.Civ.P. 8(c) which is substantially similar to Alaska Civ.R. 8(c) dealing with affirmative defenses).

a hearing in the presence of the court and opposing counsel and set forth with sufficient particularity the nature and grounds for the order sought.[22]

■■ Alaska Civil Rule 15(a) provides that when an amendment of pleadings requires leave of court, "leave shall be freely given when justice so requires."[23] The trial court has discretion to grant or deny leave to amend, and we will interfere with the exercise of that discretion only where it has been abused. Merrill v. Faltin, 430 P.2d 913, 915 (Alaska 1967). As stated in *Merrill*, the trial court, in passing upon a motion for leave to amend,

> [has] the task of balancing the hardship to appellee if the affirmative defense . . . was not allowed to be made against the disadvantage to appellant in

allowing such a defense to be made after the trial had begun.[24]

In that case, we held that it was not an abuse of discretion to permit the defendant to amend his answer to add an affirmative defense even after the trial had begun. In the case at bar, we can discern from the record little or no prejudice that could have resulted to Schnabel had United States Fire been granted leave to amend its answer and present its defense of unjust enrichment. The case had not proceeded beyond the summary judgment stage. And while the introduction of United States Fire's defense would have raised factual issues requiring trial, we fail to see how Schnabel could have been prejudiced by subjecting his claim to possible defenses that United States Fire may have been able to assert. We therefore hold that the trial court erred in refusing to grant Unit-

**22.** At the hearing, counsel for United States Fire stated:

> If the Court thinks that there is coverage I ask the Court for permission to amend our answer to either set off the amount of thirteen hundred and fifty dollars for timber, for the amount of seven thousand dollars for sand and gravel by way of offset or counterclaim, so that Mr. Schnabel will not have been unjustly enriched by these unlawful actions.

This was sufficient to put opposing counsel and the court on notice as to the nature of the relief sought and the grounds therefor.

**23.** If the superior court in fact overlooked the motion, it should have granted United States Fire's motion for post-judgment relief brought under Alaska Civ.R. 59(f). Although that motion asked for an amendment of the judgment by way of excluding the $8,350, the motion also apprised the court of the possibility that it had overlooked the motion for leave to amend. The court could not have amended the judgment simply by excising $8,350 from the total, since there was no factual basis in the record on which to base a finding of unjust enrichment. *See* note 19, *supra*. However, the court did have the power to vacate the judgment in order to reconsider the motion it had previously overlooked. 6A J. Moore, Federal Practice ¶ 59.12 [1], at 3880 (1971) (construing Fed.R.

Civ.P. 59(e) which is identical to Alaska Civ.R. 59(f).

**24.** 430 P.2d at 915 (footnote omitted). This standard is similar to the one applied in federal courts under Fed.R.Civ.P. 15(a), the federal counterpart to Alaska Civ.R. 15(a). 6 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1487, at 428 (1971) ; *see also* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962), wherein the Supreme Court sets forth the standard to be applied by federal courts under Fed.R.Civ.P. 15(a) :

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiences by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be 'freely given.'

The court further stated:

> Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226.

ed States Fire leave to amend its pleading.[25]

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

25. In so holding, we do not intend to imply that we have considered the merits of the United States Fire's proposed affirmative defense, beyond noting that it is not on its face clearly frivolous. *See* 6 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1487, at 432, n. 57 (1971).