Fred S. HONSINGER, E. Lenore Honsinger, Theodore J. Smith, Sara J. Smith, Petitioners,

v.

STATE of Alaska, and each and every Heir or Devisee, Known and Unknown, Executor and Administrator of the Estate of George Danner, and all other Parties, Legal Entities, Successors and Assigns, Unknown, Claiming any Right, Title, Estate, Lien or Interest in the Real Property or any part thereof Described in the Complaint, Respondents.

No. 5622.

Supreme Court of Alaska.

April 16, 1982.

James N. Reeves, Faulkner, Banfield, Doogan & Holmes, Anchorage, for petitioners.

Madeleine R. Levy, Asst. Atty. Gen., Anchorage, for respondents.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS, and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This case started as a quiet title action brought against the state in 1973. Plaintiffs are the owners of homestead lands in the Mendenhall Wetlands area northwest of Juneau. Between the time of the original federal homestead patent surveys and 1973, approximately 95 acres of land had emerged contiguous to the seaward side of plaintiffs' property.

Plaintiffs claimed that the property in dispute was created by accretion and, therefore, should inure to their benefit as littoral, *i.e.* shoreline, owners. The state responded that all or a portion of the land in question was formed instead by glacio-isostatic uplift [1] and, as a matter of law, should not be subject to the general rule applicable to accretion.

In May, 1979, the parties agreed to submit the legal question to the court in a motion to establish the law of the case. They entered into a stipulation, which provided in part:

"3. [The state does not contest] ... that if the property in dispute in this action was formed by the process of accretion, it would inure to the littoral owner;

.    .    .    .    .

5. In the event this court should rule that lands formed by isostatic rebound [2] inure to the benefit of the shoreline owner, title to the lands in dispute in this case may be quieted as against [the state];

6. In the event that this court should rule that lands formed entirely, or substantially, by the process of isostatic rebound do not inure to the benefit of the shoreline owner, a trial in this case may be necessary to determine the extent, if any, of the role of isostatic rebound in the formation of said lands." (footnote added).

In its decision, the superior court departed from the traditional law of accretion, holding instead that policy considerations warranted an exception to the common law rule where glacio-isostatic uplift is involved. We granted plaintiffs' petition for review. Because we find that glacio-isostatic uplift falls within the general doctrine of accretion, we now reverse.

▪ We first note that state law, rather than federal law, governs in this case. In *State, Dept. of Natural Resources v. Pankratz*, 538 P.2d 984 (Alaska 1975), we held that where, as here, title could be traced back to a federal patent, a claim of accretion was controlled by federal common law. *Id.* at 988. In reaching that conclusion, we relied on *Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973). However, since our decision in *Pankratz*, the United States Supreme Court reversed the ruling in *Bonelli* that the substantive rights of a shoreline owner were to be governed by federal common law. *State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 370–72, 97 S.Ct. 582, 586–588, 50 L.Ed.2d 550, 558–59 (1977). *Pankratz* is hereby modified to the extent that state law, rather than federal law, should have controlled the substantive issues. As noted in *Pankratz*, Alaska law and federal law on accretion are in accord. 538 P.2d at 989, 994.

▪ Accretion refers generally to the gradual and imperceptible increase in land area beside a body of water. In this context, it should be distinguished from "avulsion," which refers to a sudden and perceptible change in the shoreline. *See e.g., Omaha Indian Tribe, etc. v. Wilson*, 614 F.2d 1153, 1158–59 (8th Cir. 1980), *cert. denied*, 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980). The benefits of accretion inure to the shoreline owner, while avulsion does not change the legal bound-

---

1. "Glacio-isostatic uplift," in simplified terms, refers to the gradual rise of the earth's crust which occurs when the downward pressure exerted by a glacial ice mass diminishes. The result at shorelines is a gradual emergence of land previously submerged.

2. In the stipulation, "isostatic rebound" was used synonymously with the more specific "glacio-isostatic uplift".

ary. 5A G. Thompson, Commentaries on the Modern Law of Real Property §§ 2560–2561, at 1–32 (1978).

■ Accretion as used in its specific sense refers to "the process by which an area of land along a waterway is expanded by the gradual deposit of soil there due to the action of contiguous waters." *Schafer v. Schnabel*, 494 P.2d 802, 806 (Alaska 1972). The counterpart to accretion is "reliction," which comes about by an emergence of existing soil. 5A G. Thompson, Commentaries on the Modern Law of Real Property § 2563 at 38–41 (1978). Accretion and reliction, although physically quite different processes, are subject to the same rule regarding title; *i.e.* the benefit inures to the shoreline owner. *Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 325–26, 94 S.Ct. 517, 525–526, 38 L.Ed.2d 526, 538–39 (1973).

■ The state argues that glacio-isostatic uplift[3] is a unique geological phenomenon which does not fall within the doctrine of reliction. The state relies on some dictum from our decision in *Schafer*:

"Reliction involves an increase in the amount of exposed land beside a body of water, *but properly refers only to situations where the water itself has receded.*" (emphasis added).

494 P.2d at 806 n. 16. We cited no authority for the statement, although, as the state points out, reliction has been defined elsewhere as referring only to emergence of land as the result of receding waters. *See, e.g., Utah State Road Commission v. Hardy Salt Co.*, 26 Utah 2d 143, 486 P.2d 391, 392 (1971). We are now persuaded that reliction properly encompasses the emergence of existing soil either through recession of the water or through rise of the bed. *Ziemba v. Zeller*, 86 N.W.2d 190, 193 (1956); 5A G. Thompson, Commentaries on the Modern Law of Real Property § 2563 at 40–41 (1978).[4] Thus, glacio-isostatic uplift is a form of reliction, and therefore subject to the general common law doctrine of accretion.[5]

■ We adopt the general rule that where there is a gradual and imperceptible increase in land beside a body of water, by way of accretion or reliction, the shoreline owner is the beneficiary of title to the surfaced land.[6] The judgment of the superior court is REVERSED and, pursuant to

3. *See supra* note 1 for a definition.

4. We conclude that the particular physical process of reliction is irrelevant for several reasons. First, it is notable that no case has been located in which the application of the law of reliction turned upon the nature of the geophysical process which caused the new land to emerge. In fact, the general rule is that title to increases in land caused by *artificial* as well as *natural* means may pass to the shoreline owner. *See Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 327, 94 S.Ct. 517, 526, 38 L.Ed.2d 526, 539; *State, Dept. of Natural Resources v. Pankratz*, 538 P.2d 984, 989 (Alaska 1975); *Schafer v. Schnabel*, 494 P.2d 802, 807 (Alaska 1972). Further, the common law doctrine of reliction as referring to lands gained "when the sea shrinks back below the usual water mark," 2 W. Blackstone, Commentaries * 262, originated well before the development of the glacio-isostatic uplift theory. Finally, the changes in the relative sea level are usually the result of a combination of geophysical processes. *See File v. State*, 593 P.2d 268, 269 (Alaska 1979). Thus, it is virtually impossible for modern science, much less the judiciary, to determine which processes are responsible for which changes.

5. The superior court adopted and the state urges us to adopt the rationale of *State By Kobayashi v. Zimring*, 58 Hawaii 106, 566 P.2d 725 (1977). *Zimring* involved new land formed when a volcanic eruption overflowed the shoreline and extended it. Because the court found that these "lava extensions" were the result of neither accretion nor avulsion, it relied on equitable principles to determine ownership of the new land. In balancing the state's interest against the individual landowners' interest, the court held that title passed to the state, to be held in trust for the benefit of the people of the state. 566 P.2d at 734–35. *Zimring* is not applicable to the case at bar. Here, we are confronted with a phenomenon that falls squarely within established common law; thus, there is no need to resort to a balancing of the interests involved.

6. This general rule may be subject to certain exceptions. *See, e.g. DeBoer v. United States*, 653 F.2d 1313 (9th Cir. 1981) (upholding the "substantial accretion" exception). Because of our holding on the narrow question presented in this case, we need not discuss the applicability of these exceptions.

stipulation by the parties, title to the lands in dispute is quieted as against the state.