298 So.2d 455 (1974)
FONTAINEBLEAU HOTEL CORP. et al., Appellants,
v.
UNITED FILIGREE CORPORATION, and Royal Indemnity Company, et al., Appellees.
No. 73-1013.
District Court of Appeal of Florida, Third District.
June 18, 1974.
Rehearing Denied August 27, 1974.
*456 Sibley, Giblin, Levenson & Ward and Allan M. Glaser, Miami Beach, for appellants.
Wicker, Smith, Pyszka, Blomquist & Davant, Miami, for appellees.
Before CARROLL and HENDRY, JJ., and GOBBIE, EVELYN, Associate Judge.
GOBBIE, Associate Judge.
This appeal stems from a non-jury finding of no coverage under an insurance policy for loss caused by a partial collapse of a construction project due to premature removal of the shoring.
The appellant, Ben Novack, d/b/a Sorrento Hotel, had contracted with the Ritchie Concrete Corporation to do the concrete work on the additional east and west wings of the hotel. Pursuant to appellant's request, Ritchie submitted a Certificate of Insurance showing it was insured by Royal Indemnity Company for $200,000 under a Comprehensive General Liability Insurance policy.
On Friday, December 5, 1969 at 4:30 P.M., the west wing of the project collapsed, affecting part of the lobby and the second, third and fourth floors of the West wing. This was due to the premature removal of shoring by Ritchie's employees. Fortunately, no one was injured as Ritchie's employees and other subcontractors had gone home for the weekend.
In a suit against him filed by a lienor (later settled and not involved in this appeal), Ben Novack, d/b/a Sorrento Hotel, counterclaimed, bringing in Ritchie and Royal Indemnity. A non-jury trial was held between Novack and Ritchie after Royal Indemnity denied coverage and was granted a separate trial. The Trial Judge awarded Novack damages against Ritchie in the sum of $489,351, representing $256,623 for loss of use of the hotel property and $232,728 for out-of-pocket expenses. The Court found that the damages were caused by Ritchie's employees performing their duties in a negligent and unworkmanlike manner, in violation of the implied warranties in the contract between Ritchie and Novack.
Trial was held before the same Judge on the issue of coverage and Final Judgment was entered on July 16, 1973 against Ben Novack d/b/a Sorrento Hotel. Although Fontainebleau Hotel Corporation was a party in the action resulting in coverage denial, and thus a technical appellant in this appeal, it is unnecessary to refer to Fontainebleau since the $489,351 damage *457 judgment was in favor of Ben Novack alone.
ROYAL INDEMNITY claims the exclusions in its policy eliminated coverage for the loss.
The company agreed to pay all sums that Ritchie would become legally obligated to pay as damages because of: 
"Coverage B. Property damage caused by an occurrence ..."
We are concerned with four main exclusions. As set forth in the policy: 
"Exclusions
This insurance does not apply:
1. (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to . .. a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; (Emphasis supplied)
2. (m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"
3. There followed in the policy a BROAD FORM PROPERTY DAMAGE COVERAGE. This exclusion read: ____
"(i) to property damage
"(d) that particular part of any property not on premises owned by or rented to the insured.
(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
(ii) out of which any property damage arises, or
(iii) the restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or, on behalf of the insured ...
4. The fourth exclusion concerned Explosion, Collapse and Underground damage and provided: ____
"A. Exclusions
... it is agreed that this insurance does not apply to property damage included within:
(1) ...
(2) the collapse hazard in connection with operations identified below by a classification code number which includes the symbol "c".
(3) ...
B. Definitions
When used in reference to this insurance (including endorsements forming a part of this policy) ...
Collapse hazard includes "structural property damage" as defined herein and property damage to any other property at any time resulting therefrom. `Structural property damage' means the collapse of or structural injury to any building or structure due to (1) ... (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof ..."
Pursuant to this exclusion, the following code classifications containing the symbol "c" are applicable:
"3451 XC Underpinning Buildings or Structures  including incidental shoring, removal or rebuilding of walls, foundations, columns or piers.
3451 XC Building Raising or Moving  including incidental shoring, removal or rebuilding of walls, foundations, columns, or piers."
*458 The appellant argues that there is ambiguilty among the four exclusions (a), (m) the BROAD FORM PROPERTY ENDORSEMENT, and the Collapse Hazard Endorsement; and further that the Collapse Hazard Endorsement is inapplicable.
Appellee contends that the language in the policy is clear and unambiguous and the Court may not make a new contract for the parties under the guise of construction. Haenal v. United States Fidelity & Guaranty Co. (Fla. 1956), 88 So.2d 888, 890. Appellee further claims there is no ambiguity among the Exclusions and that 2(d)(i)(ii) and (iii) would apply; that not only the property worked on by the insured was not covered but due to the Collapse Hazard Endorsement, any other property that collapsed was not covered. (Emphasis supplied)
We disagree with Appellee and find ambiguity and repugnancy among Exclusions (a), (m) and the Broad Form Endorsement. We further find that the Collapse Hazard Endorsement is inapplicable.
In "My Fair Lady", Professor Higgins lamented, "Why Can't the English Learn How to Speak?" On behalf of the insureds and their attorneys, this plea may well be paraphrased to, "Why Can't the Companies Learn How to Write?" Why is it that so many of them insist upon cluttering up their policies with braintesting definitions, exclusions and conditions? Why do they compound the error by scattering their provisions and clauses with equally baffling phrases such as "unless as a condition precedent thereto"; "but only if"; "notwithstanding anything to the contrary"; "except with respect to"  naming just a few? For years they have insisted upon inserting ambiguity and repugnancy in their policies, to the consternation of laymen and attorneys alike, all in face of the fact that when they indulge in such practice, the courts invariably construe the policies liberally in favor of the insured and against the insurer. In fact, these days, the mere mention of the provisions of an insurance policy is looked upon as a not-so-funny joke.
(2) As set forth in Hartnett v. Southern Insurance Company, 181 So.2d 524 (Fla. 1965)
____ There is no reason why such policies cannot be phrased so that the average person can clearly understand what he is buying. And so long as these contracts are drawn in such manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public who rely upon the companies and agencies in such transactions."
There is neither bias nor prejudice against insurance companies in the wording of this opinion by the Supreme Court of Florida. It is simply stating a fact of life.
It is so well accepted that in the interpretation of an insurance policy, where ambiguity exists, the policy is to be construed liberally in favor of the insured and strictly against the insurer who wrote the policy. To cite all of the cases holding this rule of law would take up the whole of this opinion.
Further, where the terms of an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnification. Rosen v. Godson, 5 Cir., 422 F.2d 1082; Aetna Insurance Co. v. Webb, Fla.App., 251 So.2d 321; Financial Fire & Cas. Co. v. Callaham, Fla.App., 199 So.2d 529.
Let us eliminate the Collapse Hazard Endorsement first  it is inapplicable to the facts, apart from being repugnant to Exclusion (a). Ritchie was performing the concrete work on the new addition to the Sorrento Hotel. The exclusionary definitions refer strictly to work on a building or structure already in existence since the words utilized are "moving, shoring, underpinning, *459 raising or demolition". Nothing is said about the removal of shoring  just the "removal of any structural support". One has to interpret this to mean that the insurance company did not mean to include the removal of shoring; otherwise it would have said so.
Going one step further, let us peruse the code number 3451 XC, relied upon so heavily by the Appellee. For clarity, since they are brief, we shall repeat the wording: 
"3451 XC Underpinning Buildings or Structures  including incidental shoring, removal or rebuilding of walls, foundations, columns or piers."
3451 XC Building Raising or Moving  including incidental shoring, removal or rebuilding of walls, foundations, columns, or piers."
Once again, these exclusions concern demolition, repair work or remodeling. Ritchie was ERECTING a building  not DEMOLISHING it. There is wording, "including incidental shoring", followed by "removal or rebuilding of walls, foundations, columns or piers." Nowhere do we find the phrase, "removal of shoring". If the company had wished to include this, it should have said so, in plain English.
This Court points out that although the Appellee, in its Brief, accuses the Appellant of misreading this Collapse Endorsement, it is the Appellee who is guilty of such gross error. The wording under the Code classification involved is: 
"Building Raising or Moving" (Emphasis supplied). Appellee has inserted a nonexistent comma behind the word, "Building", making it erroneously read, "Building, Raising, or moving . ." Based upon such a false premise, Appellee goes on to argue that Ritchie was certainly in the process of "building" at the time of the accident and was therefore excluded. "Building Raising" is a far cry from "Building". In fact, they are at the opposite ends of the spectrum. Such poetic license with punctuation certainly excludes coverage but Royal's position is not only ludicrous but also improper and cannot be tolerated in a court of law.
Let us now turn to Exclusion (m) and the Broadform Property Damage Coverage. These two exclusions eliminate coverage resulting from any operations performed by the insured or out of which any property damage arises or the restoration, repair or replacement made necessary by reason of faulty workmanship. We can quickly dispose of the latter since the premature removal of the shoring was not "faulty workmanship"  there was nothing wrong with the shoring itself  the wrong arose out of the acts of the insured's employees, in prematurely removing the shoring.
We will now compare exclusion (m) with Exclusion (a). This is the whole crux of this appeal. We could have ignored all of the reasoning of this opinion and gone directly to Exclusion (a) but in deference to the Company, this Court has met the other issues.
Exclusion (a) provides:
"This insurance does not apply: 
(a) to liability assumed by the insured under any contract or agreement except an incidental contract but this exclusion does not apply to . .. a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."
If you were the insured, would you not consider this to mean that you were covered if you did not perform in a workmanlike manner? As set forth in Sanz v. Reserve Insurance Company of Chicago, Illinois, Fla.App., 172 So.2d 912, the terms in an insurance policy should be given their everyday meaning as understood by the "man-on-the-street".
*460 Exclusion (m) is certainly repugnant to Exclusion (a)  comparing the two, Exclusion (a) is surely more specific than Exclusion (m), which is very general. Where one repugnant provision is general in nature and another specific, the specific provision governs. Ins.Law & Practice, Vol. 13, Sec. 7387, p. 45.
Appellee has relied very heavily upon Haugan v. Home Indemnity Company, 1972, 86 S.D. 406, 197 N.W.2d 18, which ruled upon the same Exclusions (m) and (a), holding there was no ambiguity. This Court is under no obligation to follow this ruling, nor would it wish to since it cannot agree with the findings. Appellee could not have thought too much of the holding since it didn't bother to quote the finding of the Court in its Brief. As far as this Court is concerned, with due respect to the South Dakota Court, it made a new contract for the parties by inserting wording in the policy which was simply nonexistent.
Exclusion (m) and the Broadform Property Damage Coverage take away the coverage granted by Exclusion (a). The law does not allow such a situation. A policy may not give a right in one paragraph and retract it in another unless the limitation is clearly expressed. We do not have an expression of any kind in the case at bar. Horton v. American Home Assurance Company, Fla.App. 1971, 245 So.2d 136. Exclusion (a) prevails since it was found that the damage to the appellant was due to Ritchie's employees performing their duties in a negligent and unworkmanlike manner.
For the reasons assigned, the judgment is reversed and the cause is remanded to the trial court with direction to enter judgment in favor of the appellant Ben Novack, d/b/a Sorrento Hotel, against the appellee Royal Indemnity Company for an amount equal to the limit of the coverage under its said indemnity policy.
Reversed and remanded with direction.
HENDRY, J., concurs in the judgment.