535 P.2d 1063

**FEDERAL INSURANCE COMPANY, incorporated under the Laws of New Jersey, Appellant,**

v.

**P. A. T. HOMES, INC., an Arizona Corporation, Appellee.**

**No. 2 CA–CIV 1758.**

Court of Appeals of Arizona, Division 2.

May 21, 1975.

Petition to Amend Mandate Denied June 26, 1975.

Review Granted Sept. 18, 1975.

Harrison G. Dickey, Tucson, Dunn, Jones, Teilborg, Sanders, Haga & Parks, P. C., Phoenix, for appellant.

D'Antonio & Videen by Armand Salese, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

Appellee filed a complaint in superior court against the subcontractor, Dunham Concrete Contractors, Inc., alleging that Dunham failed to perform certain construction work in a workmanlike manner, requiring appellee to repair or replace the same. A jury verdict in the sum of $32,000 was returned against Dunham. After entry of judgment appellee issued and served upon appellant, Federal Insurance Company, a writ of garnishment. Appellant admitted issuing a comprehensive general insurance policy to Dunham, but denied coverage for the loss. Appellee controverted the answer in garnishment and tendered issue. Both parties moved for summary judgment. The trial court denied appellant's motion for summary judgment but granted appellee's motion in the sum of $32,000. Appellant's motions for rehearing, for new trial and to vacate judgment and enter judgment in its favor were denied.

During the period in which the policy at issue was in effect, Dunham entered into an agreement with appellee for the installation of footing, stem walls and floors for lots 157 through 238 of Rita Manor Terrace, a subdivision of Pima County, Arizona. The written agreement entered into between the parties provided in part as follows:

"All work shall be performed in a workmanlike manner, using only accepted practices and first quality materials."

The insurance policy issued by appellant to Dunham provided for comprehensive general liability, automobile liability and contractual liability.

Under the comprehensive general liability there are two coverages: Coverage A —Bodily Injury Liability; and Coverage B —Property Damage Liability.

The contractual liability insurance is also broken down into two coverages: Coverage Y—Contractual Bodily Injury Liability; and Coverage Z—Contractual Property Damage Liability.

Under the contractual liability coverage part of the policy the term "contractual liability" is defined:

" 'contractual liability' means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named Insured's products or a warranty that work performed by or on behalf of the named Insured will be done in a workmanlike manner; . . ."

Because of the foregoing definition, appellee sought recovery under Coverage B, Property Damage Liability.

The property damage liability contains the following exclusions:

"This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's product or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

\* \* \* \* \* \*

(1) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; . . ."

Attached to the policy is an endorsement entitled: "Broad Form Property Damage

Liability", the pertinent part of which are:

"It is agreed that Exclusion (1) of the policy is replaced by the following:

(1) Under Coverage D

\* \* \* \* \* \*

2. . . . . to injury to or destruction of

\* \* \* \* . \* \*

(iv) that particular part of any property, not on premises owned by or rented to the insured, . . .

\* · \* \* \* \* \*

(c) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

\* \* \*" (Emphasis added)

The trial court in a written memorandum stated:

"It is certainly reasonable to interpret the language in exclusion (a) that 'this exclusion does not apply to . . . a warranty that work performed by . . . the named insured will be done in a workmanlike manner' to include any liability for property damage that is the result of a breach of a warranty to perform work in a workmanlike manner and therefore within the scope of Coverage B—Property Damage Liability. However, it is equally reasonable to interpret the language of exclusions . . . (1) . . . to exclude from Coverage B the replacement cost of defective footings, stem walls and floors.

From this patent contradiction in the language of the exclusions from Coverage B, this Court must conclude that the insurance policy is ambiguous with respect to whether replacement cost for defective work is within Coverage B. Therefore, this particular insurance policy must be strictly construed against the insurance company and liberally construed for the insured."

No mention was made by the trial court of the "Broad Form Property Damage Liability" endorsement. We conclude that the policy is not ambiguous, that the endorsement was applicable and that the trial court erred.

The language of exclusion (1) as it appears in the printed portion of the policy and not as it appears in the endorsement has been construed vis-à-vis exclusion (a) in two cases, Haugan v. Home Indemnity Co., 86 S.D. 406, 197 N.W.2d 18 (1972) and Fontainebleau Hotel Corp. v. United Filigree Corp., 298 So.2d 455 (Fla.App. 1974). The Haugen Court held the policy provision to be unambiguous stating:

"Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion (m) [identical to exclusion (1) in the case at bench] it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product." 197 N.W. 2d at 22.

In *Fontainebleau* the Court was also faced with a provision identical to exclusion (1) and with a broad form property endorsement similar to the one in the case sub judice. The damage occurred in *Fontainebleau* when the insured's employees prematurely removed the shoring on some concrete work which caused part of the building to collapse. The court made a distinction between faulty workmanship and failure to perform in a workmanlike manner. It held that the broad form property endorsement was not applicable since the premature removal of the shoring was not "faulty workmanship" and there was nothing wrong with the shoring itself. As for the exclusion (1) type provision the court held it to be repugnant to exclusion

(a); that exclusion (a) was specific and exclusion (1) general. The court relied on the proposition that when one repugnant provision is general in nature and another specific the specific provision governs. It stated:

> "Exclusion (a) prevails since it was found that the damage to the appellant was due to Ritchie's employees performing their duties in a negligent and unworkmanlike manner." 298 So.2d at 460.

In dictum the Fontainebleau Court states:

> "Exclusion (m) [our exclusion (1)] and the Broadform Property Damage Coverage take away the coverage granted by Exclusion (a). The law does not allow such a situation. A policy may not give a right in one paragraph and retract it in another unless the limitation is clearly expressed." 298 So.2d at 460.

■ We find the Florida decision to be unpersuasive for several reasons. First, as will be seen, we are concerned in the case at bench with the broad form property damage liability endorsement and not with exclusion (1). Secondly, even if we were to draw the dubious distinction between "workmanlike manner" and "faulty workmanship", this case involves what the *Fontainebleau* Court would refer to as "faulty workmanship". Third, the *Fontainebleau* Court dictum is not applicable since exclusion (a) does not extend or grant coverage. It is a limitation or a restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all the other related exclusions contained in the policy.

■ Turning to the broad form property damage endorsement appellee, citing our case of Home Insurance Co. v. Lomax, 17 Ariz.App. 520, 498 P.2d 594 (1972), contends that since the endorsement refers to "Coverage D" a coverage which does not exist in the policy of insurance there is an ambiguity which must be resolved in its favor. We do not agree. In Home Insurance Co. v. Lomax, supra, the endorsement itself created an ambiguity which could only be resolved by the exercise of speculation, surmise and conjecture. The rule of construction that an ambiguity of language is resolved against the maker of the contract is a secondary rule of construction to be applied only if the meaning remains uncertain after application of the primary standards of construction. Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686 (1967). Reading the policy as a whole, it is clear that the parties intended to prevent a person from avoiding the contractual liability exception by merely bringing a suit in tort. The endorsement does not take away coverage previously granted. It is a limitation on exclusion (a). The workmanlike manner warranty is still available in a tort action under exclusion (a) and the broad form property liability endorsement for damage to property other than the property which is being constructed. To hold otherwise would be to turn the policy of insurance into a performance bond which it definitely is not.

The judgment of the trial court is reversed and the case is remanded to the trial court with directions to enter judgment in favor of the appellant and against the appellee.

KRUCKER, J., concurs.

HATHAWAY, Judge (dissenting).

I respectfully dissent.

Saying that a writing is plain and unambiguous does not make it so. Property damage for breach of warranty that work will be done in a workmanlike manner is expressly excepted from exclusion (a). Subsequently (*l*) excludes property damage " . . . to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts of equipment furnished in connection therewith . . . ." In view of (*l*), Does the express exception to exclusion (a), retaining a warranty that work will be done in a

workmanlike manner, remain intact? Is it eroded by exclusion (*l*) as say the majority? or Does it delimit and cut into the broad sweep of exclusion (*l*)?

The court declares that the exclusions are clear and unambiguous and proceeds to construe them to deprive the insured of the expressly retained warranty preserving it only as to third parties. If the exclusions are reasonably susceptible to a construction affording coverage, they should be so construed. I submit that they are. Accordingly, the policy would read that property damage for breach of warranty that work will be done in a workmanlike manner is expressly not excluded. Any other property damage to work performed by insured arising out of the work is excluded. Such an interpretation resolves ambiguity and repugnancy between the two clauses in a manner affording the most protection to the insured.

Referencing of the broad form property damage liability endorsement should not be excised and the endorsement tailored to fit the policy. Confusion in the policy and its endorsements should be construed against the drafter of the confusion and not against the insured. I would affirm.

### ON PETITION TO AMEND MANDATE

It is ordered that the Petition that the Mandate include a provision requiring a hearing in the Superior Court to determine the cost of the lower Court proceedings, etc., be, and it is hereby, denied, on the ground that application for costs can be made to the trial court after the Mandate has been issued.