155 N.J. Super. 474 (1977)
382 A.2d 1152
CALVIN C. WEEDO AND JANICE WEEDO, HIS WIFE, PLAINTIFFS,
v.
STONE-E-BRICK, INC. AND RALPH ROMANO, INDIVIDUALLY, DEFENDANTS AND THIRD-PARTY PLAINTIFFS APPELLANTS,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, THIRD-PARTY DEFENDANT RESPONDENT. GUS GELLAS AND THALMA A. GELLAS, HIS WIFE, PLAINTIFFS,
v.
ALFRED VIVINO, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
JAMES FREY AND RALPH ROMANO, THIRD-PARTY DEFENDANTS AND FOURTH-PARTY PLAINTIFFS RESPONDENTS,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, FOURTH-PARTY DEFENDANT APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1977.
Decided December 8, 1977.
*476 Before Judges LORA, SEIDMAN and MILMED.
Mr. George W. Parsons, Jr., argued the cause for third-party plaintiffs appellants Stone-E-Brick, Inc. and Ralph Romano (in A-559-76), and fourth-party plaintiffs respondents James Frey and Ralph Romano (in A-631-76) (Messrs. Cole, Geaney and Yamner, attorneys; Mr. H. George Avery on the brief).
Mr. Thomas P. McHugh argued the cause for third-party defendant respondent Pennsylvania National Mutual Casualty Insurance Company (in A-559-76) and fourth-party defendant appellant (in A-631-76) (Messrs. Gurry and Conlan, attorneys).
The opinion of the court was delivered by SEIDMAN, J.A.D.
These consolidated appeals arise from lawsuits in two counties. They involve the issue of whether an insurance carrier is obligated, under a comprehensive general liability insurance policy, to accord its insured a defense to claims asserted against it in those lawsuits. In one of the cases the trial judge ruled that the policy did not provide coverage and granted the insurer's motion for summary *477 judgment. In the other, the trial judge held that it did, and entered summary judgment in favor of the insured.
Pennsylvania National Mutual Casualty Insurance Company (Pennsylvania National) issued to Stone-E-Brick, Inc., a masonry contractor, a general automobile liability policy for the period from October 21, 1973, to October 21, 1974. It included "Comprehensive General Liability Insurance Coverage." The hazards described under the headings "Premises-Operation" and "Completed Operations" were:
1. Concrete or cement sidewalk, driveway, yard, airport runway, or warming apron construction.
2. Concrete construction  including foundations, making, setting up or taking down forms, scaffolds, falsework or concrete distributing apparatus.
The insurer undertook in the insuring agreement to pay
* * * on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 Coverage A. bodily injury or
 Coverage B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limits of the company's liability has been exhausted by payment of judgments or settlements.
The Weedo litigation began with a complaint filed by Calvin and Janice Weedo against Stone-E-Brick for negligence and breach of contract. They alleged that they had entered into a contract with Stone-E-Brick in August 1974 for the application of Spanish stucco to their residence; that the stucco was not applied in a good and workmanlike manner, contrary to the provisions of the contract, and that they sustained damage as a result. Stone-E-Brick denied *478 the allegations of the complaint. It also filed a third-party complaint against Pennsylvania National in which it asserted that the insurer had failed, despite demand, to defend and indemnify it under the policy against any loss from liability which might be imposed upon it by reason of the Weedo claim. It sought judgment "for all sums found due as against the third-party plaintiffs in favor of the plaintiff in the above entitled matter * * *." Pennsylvania National denied coverage for the claim asserted, relying upon exclusionary clauses and language in the policy.
In Gellas a complaint was filed by Gus and Thalma A. Gellas against Alfred Vivino, alleging that in December 1973 they entered into a contract with Vivino for the construction of a one-family residence, and that, contrary to the terms of the contract, there were numerous defects in workmanship which defendant failed to remedy. They sought damages for breach of contract. In addition to answering the complaint, Vivino filed a third-party complaint against Ralph Romano and James Frey, as agents for Stone-E-Brick, claiming that the roofing work on the Gellas dwelling had been subcontracted to Stone-E-Brick, and that any defects were the result of the latter's faulty workmanship. Indemnification was demanded. Stone-E-Brick then filed a fourth-party complaint against Pennsylvania National similar in import to the third-party complaint in Weedo. Coverage was denied by the insurer for the same reason it had asserted in the other case.
Pennsylvania National argued that the defective workmanship claims asserted against Stone-E-Brick were not within the coverage of the policy by virtue of the following exclusions:
This policy does not apply:
* * * * * * * *
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment.
*479 On the other hand, Stone-E-Brick's position was that the essence of the claims against it were for defective workmanship. It maintained that the policy provided coverage for such claims by reason of the exception to exclusion (a):
This policy does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner. [Emphasis supplied]
The trial judge in Weedo expressed the view that "I just can't conceive in good common sense of any insurance policy insuring that somebody is going to lay a tile floor properly or do a concrete job properly. That is not what an insurance policy is about." But in Gellas the trial judge looked to exclusion (a) in the policy and held that "[a] reading of this exception to the exclusion can lead the court to no other conclusion except that coverage does exist for quality of the work performed * * *."
It is to be noted that in both cases the trial judge granted summary judgment to one of the contending parties. Ordinarily, summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954). Neither side contends here that there is any disputed factual issue. The insurer does not disagree that by looking at the four corners of the complaints, a claim is asserted for property damage which, but for the exclusions, would be covered. The only issue is the interpretation of the insurance contract. This is a question for the court to decide as a matter of law, and can be the basis for summary judgment. Blum *480 v. Prudential Life Ins. Co., 125 N.J. Super. 195, 197-198 (Law Div. 1973), aff'd 132 N.J. Super. 204 (App. Div. 1975).
Pennsylvania National contends that the exception to exclusion (a) extends coverage to the insured only in the event that the alleged defective workmanship causes personal injury or property damage not excluded under some other provision of the policy. It argues that when read in conjunction with exclusions "n" and "o," the policy is clear in denying coverage, and that any other reading of the policy would effectively convert the policy into a performance bond or guarantee of contractual performance which was not the understanding of the parties at the time the policy was purchased. Stone-E-Brick's thesis is that the exclusions relied on by the insurer either do not apply to the present cases at all or there is an ambiguity in the policies which must be resolved in its favor.
There appears to be no reported case in this State interpreting the policy language here involved; none has been brought to our attention and our own research has not disclosed any. Although counsel have cited no case in point from other jurisdictions, we have uncovered three dealing with identical or comparable provisions. One, Haugan v. Home Indem. Co., 86 S.D. 406, 197 N.W.2d 18 (Sup. Ct. 1972), supports the position espoused by Pennsylvania National. The other two, Federal Ins. Co. v. P.A.T. Homes, 113 Ariz. 136, 547 P.2d 1050 (Sup. Ct. 1976), and Fontainebleau Hotel Corp. v. United Filigree Corp., 298 So. 2d 455 (Fla. D. Ct. App. 1974), cert. den. 303 So.2d 334 (Fla. Sup. Ct. 1974), are helpful to Stone-E-Brick.
In Haugan, plaintiff instituted a declaratory judgment action against his insurer to determine whether comprehensive general liability policies issued to him afforded coverage for a property damage claim asserted against him by an aviation company for which he had contracted to construct an aircraft hangar and office building. After the work *481 was completed the aviation company sued Haugan for breach of contract and negligence, alleging that the structures had not been designed in a proper and workmanlike manner in that they lacked proper foundations and footings, resulting in portions of the buildings going out of line and cracking. The insuring agreement in the policies was identical to the one in the policy involved here. Like the latter, they also contained an exclusion (a) as to "liability assumed by the insured under any contract or agreement except an incidental contract," which excepted therefrom "a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner"; and another exclusion, designated as (m), exactly like exclusion (o) in the Stone-E-Brick policy. The Circuit Court entered judgment in favor of the insured. The South Dakota Supreme Court reversed, holding that
* * * [t]he alleged facts clearly subject Business Aviation's claim to the unambiguous provisions of exclusion (m) which, without qualification, denies coverage for liability on a claim arising out of damage to the work or product of the insured.

* * * * * * * *
Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion (m) it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product. [197 N.W.2d at 22]
A dissenting judge expressed a contrary view, noting that where an ambiguity existed, the policy ought to be construed liberally in favor of the insured. He reasoned that the two provisions, (a) and (m), appeared to be of equal rank and should be construed together, with (a), as a specific clause, controlling over (m), a general one. 197 N.W.2d at 24.
*482 The underlying facts in Federal Ins. Co. v. P.A.T. Homes, supra, were that P.A.T. had contracted with Dunham Concrete Contracting, Inc., for the construction of footings, stem walls and floors in P.A.T.'s housing development. P.A.T. subsequently brought suit against Dunham seeking damages for its alleged failure to perform the contract in a workmanlike manner, necessitating repairs and replacements. Judgment was entered against Dunham, following which P.A.T. issued and served a writ of garnishment upon Dunham's insurance carrier. P.A.T.'s motion for summary judgment in that proceeding was granted, and the insurer appealed, claiming that there was no coverage under its policy of insurance. The Court of Appeals reversed. 24 Ariz. App. 59, 535 P.2d 1063 (Ct. App. 1975). The Arizona Supreme Court, reinstated the judgment of the trial court.
The policy there in question, covering comprehensive general liability, included a provision for contractual liability. As in Haugan, supra, the insuring agreement contained the same language as appears in the Stone-E-Brick policy, and there was an identically worded exclusion (a) which excepted "a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." Another exclusion in subparagraph (1), like exclusion (o) in the Stone-E-Brick policy, pertained to "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."
The pivotal issue, as expressed by the Arizona Supreme Court, was "whether the exclusions were clear and unambiguous so that the claimed loss resulting from the insured's own work was excluded from the policy's coverage." 547 P.2d at 1052. The insurer, citing Haugan, contended that the policy did not provide coverage for the loss sustained and that it was error for the trial court to compare exclusions (a) and (1) for the purpose of finding ambiguity. The *483 court declined to follow Haugan, taking note of the strong dissent in that case, and also of a contrary construction of similar policy language in Fontainebleau Hotel Corp. v. United Filigree Corp., supra. It chose to "follow the principle of construction that where various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract ambiguity is established." 547 P.2d at 1052. Viewing the language of the policy from the standpoint of the average layman untrained in either the law or insurance, the court found three possible interpretations of the provisions in question. It quoted a passage from the dissent in the Court of Appeals in the same case [535 P.2d at 1066]:
Property damage for breach of warranty that work will be done in a workmanlike manner is expressly excluded from exclusion (a). Subsequently (1) excludes property damage `* * * to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts of equipment furnished in connection therewith * * *.' In view of (1), Does the express exception to exclusion (a), retaining a warranty that work will be done in a workmanlike manner, remain intact? Is it eroded by exclusion (1) as say the majority? or Does it delimit and cut into the broad sweep of exclusion (1)? [547 P.2d at 1053]
Recognizing that either clause standing alone might be determined to be unambiguous, the court read the policy as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions, and concluded that the exclusions were reasonably susceptible to a construction that would afford coverage to the insured, noting that any ambiguity should be construed most strongly against the insurer. The court said:
* * * exclusion (a) in the policy would read that property damage for breach of warranty that work will be done in a workmanlike manner is not excluded. Exclusion (1) would read that any other property damage to work performed by the insured arising out of his work is excluded. This interpretation resolves any ambiguity and construes the language of the policy as a whole thereby giving effect to every part as far as possible.
*484 In Fontainebleau Hotel Corp. v. United Filigree Corp., supra, the appellant, Ben Novack, d/b/a Sorrento Hotel (the captioned parties were not involved in the appeal), had contracted with the Ritchie Concrete Corporation to do concrete work on additions to the east and west wings of his hotel. The west wing of the structure thereafter collapsed, allegedly because of the premature removal of shoring by Ritchie's employees. In a suit filed against him by a lienor (later settled), Novack counterclaimed against Ritchie and its insurer, Royal Indemnity Co. The latter denied coverage and was granted a separate trial. A nonjury trial of the action between Novack and the contractor resulted in an award of damages to Novack on the ground of the failure of the contractor's employees to perform their duties in a workmanlike manner, contrary to the implied warranties in the contract between the parties. The issue of coverage was resolved against Novack in the separate trial. The Florida District Court of Appeals reversed.
The policy involved extended to the insured comprehensive general liability coverage. The insuring agreement, as well as exclusions (a) and (m) [exclusion (o) in the Stone-E-Brick policy] were identical in wording to the similar provisions here. In finding coverage, the appellate court reasoned as follows:
If you were the insured, would you not consider this to mean that you were covered if you did not perform in a workmanlike manner? * * * [T]he terms in an insurance policy should be given their everyday meaning as understood by the "man-on-the-street".
Exclusion (m) is certainly repugnant to Exclusion (a)  comparing the two, Exclusion (a) is surely more specific than Exclusion (m), which is very general. Where one repugnant provision is general in nature and another specific, the specific provision governs. Ins. Law & Practice, vol. 13, Sec. 7387, p. 45.
Appellee has relied very heavily upon Haugan v. Home Indemnity Company, 1972, 86 S.D. 406, 197 N.W.2d 18, which ruled upon the same Exclusions (m) and (a), holding there was no ambiguity. This Court is under no obligation to follow this ruling, nor would it wish to since it cannot agree with the findings. * * * As far as this Court is concerned, with due respect to the South Dakota *485 Court, it made a new contract for the parties by inserting wording in the policy which was simply nonexistent.
Exclusion (m) and the Broadform Property Damage Coverage take away the coverage granted by Exclusion (a). The law does not allow such a situation. A policy may not give a right in one paragraph and retract it in another unless the limitation is clearly expressed. We do not have an expression of any kind in the case at bar. * * * Exclusion (a) prevails since it was found that the damage to the appellant was due to Ritchie's employees performing their duties in a negligent and unworkmanlike manner. [298 So.2d at 459-460]
We find the rationale of Federal Ins. Co. v. P.A.T. Homes and Fontainebleau Hotel Corp. v. United Filigree Corp., supra, more consistent with applicable law in this State relating to the interpretation of insurance policies than the views expressed in Haugan v. Home Indem. Co., supra. Our well-settled doctrines are clearly enunciated in Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7-8 (1961): If the controlling language will support two meanings, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow.
* * * [I]n evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question * * *. Insurance contracts are unipartite in character. They are prepared by the company's experts, men learned in the law of insurance who serve its interest in exercising their draftsmanship. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured. * * *. [35 N.J. at 7-8].
A corollary precept of equal importance is that exclusion clauses are strictly construed against the insurer, "especially if they are of uncertain import." Boswell v. Travelers Indem. Co., 38 N.J. Super. 599 (App. Div. 1956). *486 While an insurer may cut off liability under its policy with clear language, "it cannot do so with that dulled by ambiguity." Id. at 606. The insurer is charged with the responsibility of phrasing its contracts with such clarity as to avoid ambiguity as to their meaning; otherwise "they must be construed most strongly against the insurer." Id. at 607. When an insurance carrier puts in issue its coverage of a loss under a contract of insurance by relying on an exclusionary clause, it bears a substantial burden of demonstrating that the loss falls outside the scope of coverage. United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 99 (1977). See Ruvolo v. American Cas. Co., 39 N.J. 490, 498 (1963).
Pennsylvania National's concept of the exception to exclusion (a) is that it applies only where the alleged defective workmanship causes property damage not excluded under some other provision of the policy. Thus, it recognizes coverage under the policy for a property damage claim arising out of a breach of the warranty referred to in the exception. It contends, however, that a breach of warranty claim otherwise within the exception is clearly excluded by exclusion (o). We cannot accept that contention, for to do so would produce the anomalous situation of a provision in the policy which takes away coverage expressly granted in another provision. See Fontainebleau Hotel Corp. v. United Filigree Corp., supra. We do not deem it necessary to construe exclusion (o) in its relation to exclusion (a), as did the court in Federal Ins. Co. v. P.A.T. Homes, supra. In our view, the coexistence of the two provisions creates, at the very least, an ambiguity which must be resolved in favor of the insured so to provide coverage. To paraphrase that which we said in Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478, 485 (App. Div. 1961), if the insurer here deemed it necessary to make plain beyond dispute that claims for breach of the warranty contained in the exception to exclusion (a) were to be excluded, "it is a *487 mystery to us why the insurer did not say so in simple language. It is not a concept difficult to express."
We conclude that the trial judge in Gellas correctly granted Stone-E-Brick's motion for summary judgment. We conclude, further, that the trial judge in Weedo erroneously entered summary judgment in favor of the insurer. He should, instead, have granted Stone-E-Brick's motion for summary judgment.
Accordingly, the judgment in Gellas is affirmed. The judgment in Weedo is reversed and the matter remanded to the trial court with direction to enter summary judgment in favor of Stone-E-Brick. Jurisdiction is not retained.