U. S. FIRE INSURANCE COMPANY
and Industrial Indemnity Company
of Alaska, Appellants,

v.

Warren C. COLVER, Rita M. Colver and
Lawrence Sebring, Appellees.

No. 3862.

Supreme Court of Alaska.

Sept. 21, 1979.

Roger F. Holmes and Paul Waggoner, Biss and Holmes, Anchorage, for appellants.

LeRoy E. DeVeaux, Wanamaker and De-Veaux, Anchorage, for appellees Colver.

Jerry E. Melcher, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee Sebring.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and BURKE, JJ.

## OPINION

CONNOR, Justice.

Appellants, U.S. Fire Insurance Company and Industrial Indemnity Company of Alaska [hereinafter U.S. Fire, and Industrial, respectively], sought a declaratory judgment in the superior court that the comprehensive general liability policies which they had issued to Sebring, a builder, did not cover damages allegedly caused by Sebring's negligence and breach of various warranties in the construction of a house. The

superior court found that certain exclusionary clauses in each policy created an ambiguity as to coverage for the alleged damages. Therefore, the court construed the policies as providing coverage and entered summary judgment in favor of the insured. We have carefully reviewed the relevant provisions of each policy and, for reasons set out below, have concluded that the trial court erred and must be reversed.

The following facts are undisputed by the parties.

Sebring, individually and doing business as Sebring Builders, purchased two comprehensive general liability insurance policies to provide coverage for his business activities. The first of the policies, issued by U.S. Fire, provided coverage from May 16, 1972, to May 16, 1975. The second policy, which is similar to the first in all major respects, was purchased from Industrial and was in effect from May 16, 1975, to May 16, 1978. Both policies contain identical exclusion clauses which are relevant to the disposition of this case. The first of these clauses, hereinafter referred to as "Exclusion (a)," reads:

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner.

In addition, each policy contains two subsequent exclusion clauses which state that the insurance does not apply:

to *property damage* to the *named insured's products* arising out of such products or any part of such products;

.    .    .    .    .

to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Finally, it should be noted that both policies provide that "the [insurer] shall have the right and duty to defend any suit against the *insured* seeking *damages* [to which this insurance applies], even if any of the allegations of the suit are groundless, false or fraudulent    .    .    .."

In November of 1974, Sebring contracted with the Colvers to construct a single family dwelling for them. Sebring was designated as the general contractor for the project, and he completed his work on the house in early May of 1975. On May 27, 1975, Sebring gave the Colvers a written warranty that the dwelling had been constructed in substantial conformity with the plans and specifications approved by the Federal Housing Commissioner or the Administrator of Veterans Affairs.

In April of 1976, the Colvers filed suit against Sebring seeking recovery for damages they claimed to have sustained by reason of Sebring's alleged negligence and breach of warranties in the construction of their house. Specifically, their complaint alleges that the heating system of the house was incorrectly installed and failed to function properly and that, as a result, water pipes had frozen and burst, causing flooding which ruined a carpet. They also claimed that the house lost an excessive amount of heat due to Sebring's faulty installation of doors and windows, and that due to poor foundational work, settling had occurred which caused unsightly cracks in walls and ceilings and threatened the structural integrity of the dwelling. Other related claims were made that need not be repeated here.

After receiving notice of the Colver action, Sebring tendered his defense to both insurance companies. They in turn sought a declaratory judgment that the policies did not cover the damages claimed by the Colvers. In ruling against the insurers, the superior court found that Exclusion (a) in each policy would indicate to a lay reader that coverage would be provided for a contractor's breach of warranties of fitness and workmanlike performance in contracts with third parties. The court then concluded

that it was unnecessary to analyze the subsequent exclusions in each policy, stating:

> If subsequent exclusions operate to remove the coverage which exclusions (a) seem to confirm, then the insurance contracts contain repugnant clauses and must be construed against the insurers
>
> . . . .

■ It is well-established that we treat insurance policies as contracts of adhesion [1] when interpreting policy language. Therefore, we construe them so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms. *Stordahl v. Government Employees Insurance Company*, 564 P.2d 63, 65–66 (Alaska 1977); *Hahn v. Alaska Title Guaranty Company*, 557 P.2d 143, 145 n.5 (Alaska 1976); *INA Life Insurance Company v. Brundin*, 533 P.2d 236, 241 (Alaska 1975); *Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972); *Continental Insurance Company v. Bussell*, 498 P.2d 706, 710 (Alaska 1972). Recognizing that in some cases the terms of an insurance policy may be subject to two or more reasonable interpretations, we have stated:

> The rule in insurance contract cases is that, due to an inherent disparity in bargaining power between the insurer who drafts the contract and the insured, ambiguous coverage and exclusion clauses must be resolved in favor of coverage whenever possible.

*University of Alaska v. Modern Construction, Inc.*, 522 P.2d 1132, 1138 n.20 (Alaska 1974) (citations omitted).[2] This rule is not applied whenever two parties to a contract simply disagree over the interpretation of any of its terms. Rather, ambiguity is found to exist "only when the contract, taken as a whole, is reasonably subject to differing interpretations." *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976).

In this case, we are unable to agree that the relevant exclusion clauses in the insurance contracts, when taken together, could be reasonably interpreted by a lay-person as providing coverage for damages to the insured's work product. The two exclusions which follow Exclusion (a) in each contract clearly state that the insurance does not apply to property damage to the *insured's work or work product which arise out of his work or work product*. By contrast, the exception to Exclusion (a) indicates only that coverage will not be denied merely because a claim against the insured is based upon breach of warranty under contract. In other words, Exclusion (a) deals with causes of action, whereas the subsequent exclusions deal specifically with types of injuries that are not covered under the policy. As stated by the Supreme Court of South Dakota, in a case substantially similar to the one at bar:

> Exclusion (a) does not extend or grant coverage. To the contrary it is a limita-

---

1. In *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977), this court explained:

   The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties. We have noted, however, that interpretation of insurance contracts is controlled by somewhat different standards. This is due, in part, to the inequality in bargaining power and to the fact that certainty is required to ascertain rates. An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language. [footnotes omitted.]

   In the original this paragraph included the following footnote to explain the phrase "contract of adhesion":

   *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 384 n.5 (9th Cir. 1965) states:

   "Adhesion contract" is a handy shorthand descriptive of standard form printed contracts prepared by one party and submitted to the other on a "take it or leave it" basis. The law has recognized there is often no true equality of bargaining power in such contracts and has accommodated that reality in construing them. See Kessler, Contracts of Adhesion, 43 Columbia L.Rev. 629 (1943).

2. *See also United States Fire Ins. Co. v. Schnabel*, 504 P.2d 847, 851 n.13 (Alaska 1972); *Marwell Constr., Inc. v. Underwriters at Lloyd's, London*, 465 P.2d 298, 313 (Alaska 1970); *Pepsi Cola Bottling Co. v. New Hampshire Ins. Co.*, 407 P.2d 1009, 1013 n.4 (Alaska 1965).

tion or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with [subsequent exclusions] it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product.

*Haugan v. Home Indemnity Company*, 86 S.D. 406, 197 N.W.2d 18, 22 (S.D.1972); *see St. Paul Fire & Marine Insurance Company v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836, 841 (1978).

■ While we recognize that Exclusion (a) may have been somewhat confusing to the insured, the subsequent exclusions gave him full notice that property damage to his work or work product, arising out of his work or work product, would not be covered

by the policy. Hence, we do not believe that a layperson reading Exclusion (a) together with the other exclusions could reasonably conclude that coverage was provided for any and all damages claimed to have been caused by the insured's breach of warranties.[3] We hold that the insurance contracts are not ambiguous as to coverage for the claims made against the insured. Therefore, we reverse and remand the case to the superior court for further proceedings consistent with this opinion.[4]

REVERSED and REMANDED.

RABINOWITZ, Chief Justice, dissenting.

Although I find the question in this case to be a close one, I have concluded that I cannot agree with the court's opinion. In reaching this conclusion, I am persuaded by the reasoning of *Weedo v. Stone-E-Brick, Inc.*, 155 N.J.Super. 474, 382 A.2d 1152 (1977), *reversed*, 81 N.J. 233, 405 A.2d 788 (1979).[1]

In *Weedo*, in the course of construing insurance policy language identical to that

---

**3.** It is important to note that the insured in this case has brought an action against the insurance agent who sold him the policies alleging that the agent made a number of misrepresentations relating to the coverage which the policies provided. Since final disposition of that matter has not been made below, it is not before us on appeal. Therefore our decision today is confined solely to an interpretation of the language on the face of the insurance contracts. As this court stated in *INA Life Ins. Co. v. Brundin, supra*, 533 P.2d at 242:

A lay person's expectations of insurance coverage are of course formed by many factors besides the language of the policies themselves. Typically, a salesman explains the technical terminology to the prospective purchaser of insurance. Often, . . . purchase of insurance is induced by printed advertising flyers which describe the coverage. It cannot realistically be said that the expectations of a purchaser of insurance are not generated in part by such representations. Moreover, it has frequently been held that an insurer is under a duty not to misrepresent the existence of coverage, either deliberately or negligently. For this reason and in order to give effect to our rule of interpretation that a policyholder's reasonable expectations of coverage are to control, all representations of the insurer to the prospective purchaser must be taken into account. An insurer will

in fact be bound by its representations to the extent that they form, within the policy itself, the expectations of a reasonable policyholder. [footnotes omitted.]

**4.** On remand, it will be necessary for the superior court to determine whether the complaint alleges *any* damages which, if proven, would be covered by the policy. If it does contain such allegations, then under the standard duty to defend clause contained in each policy the insurers would be required to provide for Sebring's defense. *Afcan v. Mutual Fire Marine & Inland Ins. Co.*, 595 P.2d 638 (Alaska, 1979).

**1.** I wish to note my agreement with the views expressed by Justice Pashman in his dissent to the supreme court's reversal of the lower court.

Of five cases from other jurisdictions which address issues nearly identical to the one raised in this appeal, the following rule in favor of the insured: *Federal Ins. Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976); *Fontainebleau Hotel Corp. v. United Filigree Corp.*, 298 So.2d 455 (Fla.App.), *cert. denied*, 303 So.2d 334 (Fla.1974); *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (N.D.1978). The following cases rule against the insured: *St. Paul Fire and Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972).

at issue in the present case, the court stated:

[The insurance company's] concept of the exception to exclusion (a) is that it applies only where the alleged defective workmanship causes property damage not excluded under some other provision of the policy. Thus, it recognizes coverage under the policy for a property damage claim arising out of a breach of the warranty referred to in the exception. It contends, however, that a breach of warranty claim otherwise within the exception is clearly excluded by exclusion (*o*). We cannot accept that contention, for to do so would produce the anomalous situation of a provision in the policy which takes away coverage expressly granted in another provision. We do not deem it necessary to construe exclusion (*o*) in its relation to exclusion (a), as did the court in *Federal Ins. Co. v. P.A.T. Homes*, [113 Ariz. 136, 547 P.2d 1050 (1976)]. In our view, the coexistence of the two provisions creates, at the very least, an ambiguity which must be resolved in favor of the insured so as to provide coverage. To paraphrase that which we said in *Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc.*, 66 N.J.Super. 478, 485, 169 A.2d 509, 512 (App.Div.1961), if the insurer here deemed it necessary to make plain beyond dispute that claims for breach of the warranty contained in the exception to exclusion (a) were to be excluded, 'it is a mystery to us why the insurer did not say so in simple language. It is not a concept difficult to express.'

*Id.* 382 A.2d at 1158–59 (citation omitted).

Exclusions (j), (*l*) and (m) of the U.S. Fire Insurance policy and exclusions (*l*), (n) and (*o*) of the Industrial policy appear to retract coverage which is previously recognized in exclusion (a) of both policies. Under our rules of construction for insurance policies,[2] a policy should not be able to provide for coverage in one paragraph which it takes away in another without at least a clear expression of the intended limitation. I do not think that a layperson, reading the insurance policies in this case, "reasonably" would have understood that because (a) is an exclusion it "merely removes the breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability" but "remains subject to and limited by all other related exclusions."[3] I would thus hold that the repugnancy among the policy provisions should be construed in favor of the insured to provide the coverage a layperson would expect.

2. *Stordahl v. Government Emp. Ins. Co.*, 564 P.2d 63, 66 (Alaska 1977), states: "An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language. It is not required that ambiguities be found in the policy language as a condition precedent for such construction." [footnotes omitted]

3. *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18, 22 (1972).